EXHIBIT 1

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC;
and DOES 1 to 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** JAIME GONZALEZ, individually and
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* as Successor in Interest to the
Estate of Santiago Gonzalez, deceased; JORGE GONZALEZ; AMERICO GONZALEZ;
MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ;
TARCILA REVELES; and SANTIAGO GONZALEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Tulare
221 S. Mooney Blvd.
Visalia, California 93291

CASE NUMBER:
*(Número del Caso):*
**283547 -**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Warren R. Paboojian, No. 128462
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BARADAT & PABOOJIAN, INC.
720 W. ALLUVIAL AVE., FRESNO, CA 93711                                                          (559) 431-5366

DATE: **JUL 15 2020**          Clerk, by                          , Deputy
*(Fecha):*   **Stephanie Cameron**  *(Secretario)*  **April Mathews**   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

COURT SEAL

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **SPRUCE HOLDINGS, LLC**

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☒ other *(specify):* **Corporation Code: 17061 (Limited Liability Company)**
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

JUL 15 2020

STEPHANIE CAMERON, CLERK
BY:    April Mathews

1   Warren R.Paboojian, No. 128462
    wrp@bplaw-inc.com
2   Jason S. Bell, No. 213234
    jsb@bplaw-inc.com
3   BARADAT & PABOOJIAN, INC.
    720 West Alluvial Avenue
4   Fresno, California 93711
    Telephone:  (559) 431-5366
5   Facsimile:  (559) 431-1702

6   Attorneys for Plaintiffs
    JAIME GONZALEZ, individually
7   and as Successor in Interest to the
    Estate of Santiago Gonzalez, deceased;
8   JORGE GONZALEZ; AMERICO GONZALEZ;
    MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ;
9   ROBERTO GONZALEZ; TARCILA REVELES;
    and SANTIAGO GONZALEZ

Assigned to Judicial Officer BRET D. HILLMAN

For All Purposes

<u>CASE MANAGEMENT CONFERENCE</u>

Hearing Date: 11/16/2020
Time: 8:30 am
Department: 7

10

11                    SUPERIOR COURT OF CALIFORNIA

12                         COUNTY OF TULARE

13   JAIME GONZALEZ, individually and as        )   Case No. 283547
     Successor in Interest to the Estate of Santiago  )
14   Gonzalez, deceased; JORGE GONZALEZ;        )   COMPLAINT FOR DAMAGES
     AMERICO GONZALEZ; MARISUSI              )
15   RODRIGUEZ; RAMONA RODRIGUEZ;            )        1.    Elder Abuse
     ROBERTO GONZALEZ; TARCILA               )        2.    Willful Misconduct
16   REVELES; and SANTIAGO GONZALEZ,         )        3.    Wrongful Death
                                              )
17              Plaintiffs,                    )
                                              )
18        vs.                                  )   DEMAND FOR JURY TRIAL
                                              )
19   REDWOOD SPRINGS HEALTHCARE            )   ACTION IS AN UNLIMITED CIVIL CASE
     CENTER; SPRUCE HOLDINGS, LLC; and      )   (exceeds $25,000)
20   DOES 1 to 50, inclusive,                 )
                                              )
21              Defendants.                    )
                                              )
22

23                                  I.

24                           <u>THE PARTIES</u>

25        1.    Plaintiffs, JAIME GONZALEZ; JORGE GONZALEZ; AMERICO GONZALEZ;

26   MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ; TARCILA REVELES;

27   and SANTIAGO GONZALEZ(hereinafter jointly referred to as "Plaintiffs"), are the natural born children

28   of Santiago Gonzalez, deceased, who died of COVID-19 on or about April 10, 2020.

2. JAIME GONZALEZ is the Successor in Interest to the Decedent, Santiago Gonzalez, and with this complaint is an executed affidavit in compliance with CCP section 377.32, and thereby proceeds as Successor in Interest to the claims of Decedent, Santiago Gonzalez, as stated herein, and brings this action as individual as such. See Declaration of Jaime Gonzalez filed concurrently herewith. Plaintiff brings this combined survival action on behalf of Santiago Gonzalez's estate and also this wrongful death action under the provisions of Code of Civil Procedure section 377.60, which provides that Plaintiff, as the personal representative of the Decedent, may bring this wrongful death action on behalf of the decedent's heirs.

3. Defendants, REDWOOD SPRINGS HEALTHCARE CENTER and SPRUCE HOLDINGS, LLC (hereinafter collectively referred to as "Defendants" or "REDWOOD SPRINGS"), were, and at all relevant times, in the business of providing skilled nursing as a skilled nursing facility which is located at 1925 E. Houston Avenue, Visalia, California, and were subject to the requirements of federal and state laws regarding the operation of skilled nursing facilities operating in the State of California.

4. Plaintiffs are informed and believe, and therefore allege, that at all times relevant to this complaint, DOES 1 to 50 were licensed and unlicensed individuals, entities, employees, directors, officers, and/or managing agents of Defendants, rendering care and services to Decedent, Santiago Gonzalez, and whose conduct caused the injuries, damages, and death alleged herein. It is alleged that, at all times relevant hereto, the Defendants were aware of the unfitness of DOES 1 to 50 to perform their necessary job duties and yet employed these persons and/or entities in disregard of the health and safety of Decedent, Santiago Gonzalez.

5. Plaintiffs are ignorant of the true names and capacity of those Defendants sued herein as DOES 1-50 and, for that reason, has sued such Defendants by fictitious names. The true names and capacities of Defendants DOES 1-50, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOE are in some manner responsible for the acts and occurrences set forth herein. Plaintiffs will ask leave of court to amend this complaint to show the true names and capacities of Defendants 1-50,

1  inclusive, as well as the manner in which each DOE Defendant is responsible, when the same has been

2  ascertained.

3       6.      Plaintiffs are informed and believe and, upon such information and belief, allege that at

4  all times herein mentioned, each of the Defendants herein and DOES 1-50 was an agent, servant,

5  employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter

6  ego, of each of the remaining Defendants and was at all times acting within the course and scope of said

7  agency, service, employment, conspiracy, partnership and/or joint venture.

8                                        **II.**

9              **BACKGROUND FACTS RE: DECEDENT, SANTIAGO GONZALEZ**

10      7.      Santiago Gonzalez was born August 23, 1933.  At all relevant times herein, Santiago

11  Gonzalez was older than 65 years and, thus, was an "elder" as that term is defined in Welfare and

12  Institutions Code 26 section 15610.27.

13      8.      Santiago Gonzalez was placed in the Defendants' facility and, at all times mentioned

14  herein, they agreed to accept the responsibility to provide such caretaking and custodial services and

15  custody of Santiago Gonzalez.  Each of these services are services that a nursing facility operator is

16  required by the law in the State of California to provide including, but not limited to, Health & Safety

17  Code section 1418.6; 22 CCR sections 72301, 72303, 72311, 72515 (b), 72527 (a)(3), 72527 (a)(10),

18  72527 (a)(12).  Santiago Gonzalez was a patient at the Defendants' facility for approximately two (2)

19  years prior to his death.

20      9.      In or about January 2020, the first cases of COVID-19 infections began to appear in the

21  United States.  By March 4, 2020, the COVID-19 virus had become widespread and posed such a danger

22  to the people of the State of California, that Governor Gavin Newsom, declared a state of emergency for

23  California, as did many other states which followed in the same manner.   Following the state of

24  emergency, Counties issued shelter in place orders and canceled school, which included Tulare County.

25      10.     It was widely known and well publicized as early as February 2020, that the elderly and

26  persons with underlying health conditions are most vulnerable to the COVID-19 virus.  There was also

27  extensive media coverage of the dangers of widespread infection in nursing homes and dangers of death

28  to its elderly patients.  This media coverage was throughout the country as early as February 2020,

1  involving a nursing home in the state of Washington, where many of its patients were infected and dozens
2  died.  With the widespread knowledge of the very serious danger to elderly people and infection rate in
3  nursing homes, it quickly became apparent that nursing homes needed to take immediate action in order
4  to protect the health of its patients from COVID-19 exposure.  Measures included, but were not limited
5  to, requiring employees/visitors to use Personal Protective Equipment (face masks, gloves and gowns),
6  restricting the number of visitors to nursing homes, testing of residents and employees, regularly taking
7  the temperature of employees and residents, isolating non-COVID-19 employees and residents from
8  residents that are suspected or known to be infected with the virus.

9      11.    Despite the knowledge by REDWOOD SPRINGS of the dangers to its residents,
10  referenced above, through March and the beginning of April 2020, they failed to take appropriate safety
11  measures, including the distribution and use of Personal Protective Equipment and monitoring of
12  employees and staff for COVID-19 symptoms.  Further, REDWOOD SPRINGS became aware of the
13  infection of employees and residents with COVID-19, but failed to immediately notify other employees
14  and family members of the residents of the outbreak at the nursing home.  Based upon information and
15  belief, the facility continued to require and encourage employees to enter the facility and continue to work
16  within the facility, despite reporting to the facility of their own COVID-19 infection and/or related
17  symptoms.  REDWOOD SPRINGS required employees with infections and/or infection-related
18  symptoms to attend work, because they did not want to spend the money to hire additional staff, while
19  other staff was missing due to COVID-19 infection.  REDWOOD SPRINGS also failed to provide staff
20  with the proper disinfectant supplies to assist with the prevention of the spread of the virus within the
21  facility and cross-contamination of infected versus non-infected residents.

22      12.    On multiple occasions, REDWOOD SPRINGS assured the family of Santiago Gonzalez
23  that he was safe in the facility and that all safety precautions were being taken to protect him from
24  COVID-19 infection.  However, based upon the above, this was not true.

25      13.    On or about April 3, 2020, Santiago Gonzalez tested positive for COVID-19.  For the
26  approximate 2 years prior, Santiago Gonzalez, was solely in the care, custody, control and protection of
27  Defendants.  Defendants and each of their failure to properly and adequately care for and protect the
28  elderly patients in their care, including Santiago Gonzalez, he and many other patients at the facility

1   contracted COVID-19. During the seven (7) days following the confirmation of testing positive,

2   REDWOOD SPRINGS continually told Santiago Gonzalez' family that he was doing "fine" and had "no

3   temperature".

4        14.    Again, on April 10, 2020, the family was told Santiago Gonzalez was doing "fine". Later

5   that day, on April 10, 2020, to the family's surprise, they were notified that Santiago Gonzalez had passed

6   away. Santiago Gonzalez's death was the result of Defendants' and DOES 1-50, and each of their, failure

7   to act, care for, protect and assist him.

8        15.    Since January 2020 to the filing of this complaint, REDWOOD SPRINGS has had 124

9   of its residents and 71 of its employees test positive for COVID-19. Of the 124 residents, 29 of them

10  have died as a result of the COVID-19 infection while at REDWOOD SPRINGS.

11       16.    Prior to April 3, 2020, based upon information and belief, Defendants and each of them

12  knew, or should have known and/or were put on notice, that there were multiple warnings, health dangers,

13  procedures and protocols issued by the local, state and federal governments, regarding the prevention

14  measures for spreading and contracting COVID-19, regarding the general public and their elderly

15  residents. It is further believed that Defendants knew, or should have known, that the elderly and

16  healthcare facilities caring for the elderly were especially vulnerable to contracting and spreading

17  COVID-19. Further, Defendants knew, or should have known, that the elderly population was vulnerable

18  to becoming deathly ill if infected with COVID-19. Despite this knowledge and the safety procedures

19  and protocols being issued, Defendants and each of them, either did not implement those safety

20  procedures and/or whatever safety procedures they did implement, if any, Defendants negligently failed

21  to follow/monitor them and/or disregarded them. These failed safety measures included, but are not

22  limited to:

23          1.    Failure of REDWOOD SPRINGS to provide staff and others at the facility
             Personal Protective Equipment;

24

25          2.    Failure of REDWOOD SPRINGS to require the staff and others while at the
             facility to use and/or monitor the use of Personal Protective Equipment;

26          3.    Failure to adequately staff REDWOOD SPRINGS with personnel uninfected with
             COVID-19;

27

28          4.    Failure to provide REDWOOD SPRINGS staff and others with adequate training;

5.   Failure of REDWOOD SPRINGS to monitor the health of persons and staff entering the facility for COVID-19 related symptoms and infection;

6.   Failure to provide adequate cleaning supplies and failure to adequately clean and sanitize the facility;

7.   Failure to provide adequate care and/or monitoring of elderly patients that were positive for COVID-19;

8.   Failure to properly and adequately isolate infected and suspected infected residents from non-infected residents and prevent cross-contamination of the healthy elderly residents;

9.   Failure to timely test Santiago Gonzalez and other residents and staff for COVID-19 in order to timely isolate and separate the infected individuals from non-infected individuals; and

10.  Failure to adequately inform the family of Santiago Gonzalez of the COVID-19 infection that had permeated the facility and the true health condition of Santiago Gonzalez.

17.   Deficiencies relating to Defendants' and DOES 1-50, and each of their, failure to adequately care for and assist their residents, REDWOOD SPRINGS and DOES 1-50, and each of them, knew, or should have known and/or were put on notice, that the residents of the REDWOOD SPRINGS facility, including Santiago Gonzalez, were not receiving adequate care and assistance.  Consequently, REDWOOD SPRINGS and DOES 1-50, and each of them, knew, or should have known, that their residents, including Santiago Gonzalez, were being neglected.  Defendants, and each of them, failed to realize, supervise, investigate, prevent, train, monitor, care for, protect and discover the neglect that was occurring at REDWOOD SPRINGS.

## III.

## BACKGROUND FACTS RE: DEFENDANTS

18.   REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago Gonzalez to provide protection, supervision and assistance in compliance with all applicable federal and state laws and regulations and with accepted standards and principles that apply to those providing services in a facility such as REDWOOD SPRINGS. REDWOOD SPRINGS and DOES 1-50, and each of them, failed to operate REDWOOD SPRINGS in compliance with the applicable statutes, regulations, standards and principles.

///

19.     REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago Gonzalez, yet failed to provide supervision, care and assistance by sufficient numbers of personnel.

20.     REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to their residents, including Santiago Gonzalez, yet failed to provide services and activities and failed to operate, own, manage, supervise, monitor, control and/or administer their facility in a manner that enabled their residents to attain or maintain the highest practicable physical, mental, and psychosocial safety and well-being of each resident.

21.     REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to their residents, including Santiago Gonzalez, yet failed to provide supervision and assistance and failed to provide a sufficient budget, personal protective equipment and sufficient healthy staffing to meet the needs of and protection of their residents health and safety.

22.     REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago Gonzalez, yet failed to supervise, protect and assist him and other residents in a manner and in an environment that promoted maintenance or enhancement or protection of his quality of life.

23.     REDWOOD SPRINGS and DOES 1-50, and each of them, failed to exercise that degree of care that a reasonable person in a like position would exercise with respect to the supervision care and assistance of Santiago Gonzalez by the following manner, including, but not limited to: failing to conduct an ongoing, accurate, and comprehensive assessment of his needs; failing to supervise and provide assistance; failing to timely notify a physician and Santiago Gonzalez's family and legal representative of material changes in his condition and needs; failing to maintain sufficient healthy staff on duty at all times to meet the needs of their residents; failing to operate their facility with a sufficient budget and staff so as to operate in a lawful and safe manner; and failing to meet the safety measures described above in paragraphs 9 through 16.

24.     REDWOOD SPRINGS and DOES 1-50, and each of their, alleged violations of state and federal laws and regulations, standards and principles as specifically set forth herein are not meant to limit the generality of the allegations contained herein, but are merely illustrative of the depth of their malicious, oppressive, fraudulent and/or reckless conduct to be more fully proven at time of trial.

///

25. REDWOOD SPRINGS and DOES 1-50, and each of them, had within their power, ability, and discretion to mandate that their REDWOOD SPRINGS facility employ, monitor and supervise adequate staff to meet the needs and protection of their residents, including Santiago Gonzalez, yet REDWOOD SPRINGS and DOES 1-50, and each of them, intentionally and/or with conscious disregard continuously failed to do so.

26. Defendants and DOES 1-50, inclusive, either makes or approves key decisions concerning the day-to-day operations of REDWOOD SPRINGS, such as staffing levels, implementing and monitoring safety measures, employee hiring and firing, budgets and related issues, which decisions and directives were made at the direction of and/or the benefit of DOES 1-50. Specifically, DOES 1-50, and each of them, performed cash management services, clinical consulting, accounts payable and processing, operational consulting and oversight support for their facility. Plaintiffs herein allege REDWOOD SPRINGS was underfunded and understaffed. Thus, DOES 1-50, and each of their, wrongful conduct was it's underfunding and understaffing via the operation and management of REDWOOD SPRINGS.

27. Specifically, Defendants and DOES 1-50, and each of them, are operators and/or managers of REDWOOD SPRINGS. The Administrator, and other managing agents at the REDWOOD SPRINGS facility, authorized, ratified and/or directed the conduct of REDWOOD SPRINGS, and DOES 1-50, inclusive, and its employees. REDWOOD SPRINGS and DOES 1-50, and each of them, were the knowing agents and/or alter-egos of one another. The officers, directors, and managing agents of REDWOOD SPRINGS and DOES 1-50, and each of them, directed, approved and/or ratified all of the acts and omissions of each of the other co-defendants. Thus, making each of REDWOOD SPRINGS and DOES 1-50, and each of them, vicariously liable for the acts and omissions of their co-defendants.

28. REDWOOD SPRINGS and DOES 1-50, and each of them, also provided management and supervisory services to the REDWOOD SPRINGS facility directly related to the residential care provided to residents, including Santiago Gonzalez. REDWOOD SPRINGS and DOES 1-50, and each of them, also controlled the budgets, the staffing, staff training, development and implementation of the policies and procedures, facility licensing, accounts payable, accounts receivable, facility development

///

///

1  and leasing, and accounting.  Thus, REDWOOD SPRINGS and DOES 1-50, and each of them, are

2  directly liable for their own tortuous conduct in the hiring, training, and management of their employees

3  and the operations of the facility and care of their patients.

4  **IV.**

5  **FIRST CAUSE OF ACTION**<br>**Elder Abuse**

6  **(Against All Defendants and DOES 1-50)**

7      29.    Plaintiffs hereby incorporate the allegations asserted in Paragraphs 1-28 above, as though

8  set forth at length below.

9      30.    At all relevant times herein, REDWOOD SPRINGS and DOES 1-50, and each of them,

10  had care or custody of Santiago Gonzalez, who was over 65 years of age, while he was in their care or

11  custody.

12      31.    In violation of the Elder Abuse and Dependent Adult Civil Protection Act, REDWOOD

13  SPRINGS and DOES 1-50, and each of them, failed to use the degree of care that a reasonable person

14  in the same situation would have used in:

15          a.    Assisting in personal hygiene or in the provision of food, clothing, or shelter.

16          b.    Providing medical care for physical and mental health needs.

17          c.    Protecting Santiago Gonzalez from foreseeable health and safety hazards.

18          d.    Preventing malnutrition or neglect. (Welfare &Institutions Code section 15610.57)

19      32.    REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago

20  Gonzalez to provide him with the necessary custodial and professional care to attain or maintain the

21  highest practicable physical, mental and psychosocial well-being in accordance with the comprehensive

22  assessment and plan of case as required by Section 72515(b) of Title 22 of the California Code of

23  Regulations and Health and Safety Code section 1418.6. REDWOOD SPRINGS and DOES 1-50, and

24  each of them, failed to meet this duty to Santiago Gonzalez, thereby causing his injury.

25      33.    REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago

26  Gonzalez to at all times fully inform him and his family of his health, which is protected by Section

27  72527(a)(3) of Title 22 of the California Code of Regulations. REDWOOD SPRINGS and DOES 1-50,

28  ///

1  and each of them, failed to meet this duty to Santiago Gonzalez, thereby causing him injuries and

2  ultimately his death.

3      34.  REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago

4  Gonzalez to respect his right to be free from mental and physical abuse, which right is protected by

5  Section 72527(a)(10) of Title 22 of the California Code of Regulations. REDWOOD SPRINGS and

6  DOES 1-50, and each of them, failed to meet this duty to Santiago Gonzalez, thereby causing him injuries

7  and ultimately his death.

8      35.  REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago

9  Gonzalez to at all times be treated with consideration, respect and dignity, in the care of his personal

10  needs, which right is protected by Section 72527(a)(12) of Title 22 of the California Code of Regulations.

11  REDWOOD SPRINGS and DOES 1-50, and each of them, failed to meet this duty to Santiago Gonzalez,

12  thereby causing him injuries and ultimately his death.

13      36.  REDWOOD SPRINGS and DOES 1-50, and each of them, owed a duty to Santiago

14  Gonzalez to notify a physician of any sudden or marked adverse change in signs, symptoms or behavior

15  exhibited by a resident, which right is protected by Section 72311 (3)(b) of Title 22 of the California Code

16  of Regulations. Upon information and belief, REDWOOD SPRINGS and DOES 1-50, and each of them,

17  failed to meet this duty to Santiago Gonzalez, thereby causing his injuries and ultimately his death.

18      37.  Section 72517 of Title 22 of the California Code of Regulations mandates that a residential

19  care facility has an ongoing education program planned and conducted for the development and

20  improvement of necessary skills and knowledge for all facility personnel which shall include: the

21  prevention and control of infections, accident prevention and safety measures, and preservation of patient

22  dignity.  Upon information and belief, REDWOOD SPRINGS and DOES 1-50, and each of them, did

23  not provide services consistent with this regulation thereby causing injury to Santiago Gonzalez.

24      38.  The injuries suffered by Santiago Gonzalez while a resident at REDWOOD SPRINGS

25  were a result of REDWOOD SPRINGS' and DOES 1-50, and each of their, intentional and/or reckless

26  care of decedent, while in their custody and control.  REDWOOD SPRINGS intentionally and/or

27  recklessly exposed decedent to the COVID-19, as set forth and described above in paragraphs 9 through

28  15.  REDWOOD SPRINGS neglected Santiago Gonzalez, abandoned their obligations to him and

1 engaged in other mistreatments that resulted in physical harm and pain and mental suffering. Defendants

2 deprived him of services that were necessary to avoid physical harm and mental suffering and failed to

3 provide adequate funding and staffing to ensure that the nursing home provided necessary care for him.

4      39.    By virtue of the foregoing, REDWOOD SPRINGS acted with recklessness at all times

5 during the care and treatment of Santiago Gonzalez.

6      40.    By virtue of the foregoing, in addition to pre-death pain and suffering damages under

7 Welfare & Institutions Code section 15657, Plaintiffs are entitled to attorney's fees and costs.

8      41.    Santiago Gonzalez has been harmed by Defendants' conduct as described herein. The

9 pattern of substandard care and neglect put him at extremely high risk for infection of COVID-19 and

10 resulting complications, including injury and death. Defendants' and DOES 1-50 conduct was a

11 substantial factor in causing Plaintiffs to suffer physical, emotional and economic harm, as well as other

12 damages in amount according to proof at the time of trial.

13      42.    Defendants' conduct described herein was intended by the Defendants to cause injury to

14 Plaintiffs or was despicable conduct carried on by Defendants with a willful and conscious disregard of

15 the rights and safety of Santiago Gonzalez, or subjected him to cruel and unjust hardship in conscious

16 disregard his rights and safety, or was an intentional misrepresentation, deceit, or concealment of a

17 material fact known to the Defendants with the intention to deprive Plaintiffs of property, legal rights or

18 to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code

19 section 3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set

20 example of Defendants.

21      43.    The corporate authorizations and enactments of Defendants and DOES 1-50, and each of

22 them, alleged herein, constituted the permission and consent of REDWOOD SPRINGS misconduct by

23 REDWOOD SPRINGS and DOES 1-50, and each of them, by and through the corporate officers,

24 managing agents and directors, who had within their power the ability and discretion to mandate that

25 REDWOOD SPRINGS meet the needs of their residents, including Santiago Gonzalez, as required by

26 applicable rules, laws and regulations governing the operation of residential care facilities in the State of

27 California as set forth above. The conduct constitutes ratification of REDWOOD SPRINGS' misconduct

28 by REDWOOD SPRINGS and DOES 1-50, which led to the injuries and death of Santiago Gonzalez.

44.   REDWOOD SPRINGS and DOES 1-50, by and through their managing agents, acted with recklessness, oppression, fraud, and/or malice in neglecting Santiago Gonzalez.   The failure of REDWOOD SPRINGS and DOES 1-50, and each of them, to provide adequate care was a deliberate disregard of the high degree of probability that an injury would occur. REDWOOD SPRINGS and DOES 1-50, and each of them, acted with a conscious choice of a course of action with knowledge of the serious danger to Santiago Gonzalez involved in that course of action.

45.   REDWOOD SPRINGS and DOES 1-50, and each of them, by and through their officers, directors, and/or managing agents, had advance knowledge of the unfitness of the employees who committed the acts and employed them with a knowing disregard of the rights and safety of others. REDWOOD SPRINGS and DOES 1-50, and each of them, by and through its officers, directors, and/or managing agents, authorized the conduct of the employees who committed the acts and/or knew of the wrongful conduct of the employees who committed the acts and adopted or approved the conduct after it occurred.

**V.**

### SECOND CAUSE OF ACTION
**Willful Misconduct**
**(Against All Defendants and DOES 1-50)**

46.   Plaintiffs hereby incorporate the allegations asserted in Paragraphs 1-45 above, as though set forth at length below.

47.   At all times referenced herein, during the Defendants' care of Santiago Gonzalez, they knew, or should have known, that Defendants' failure to comply with standards, by providing custodial care wherein infected workers lacked personal protective equipment and by not employing and overseeing reasonable policies and procedures for isolating residents and employees that either tested positive for, or were suspected to have COVID-19, away from uninfected residents and employees. These failures and others, put at the time healthy residents, including Santiago Gonzalez, and other residents in peril of being infected with COVID-19.

48.   At all times referenced herein, during the Defendants' care of Santiago Gonzalez, they knew, or should have known, that the peril created by Defendants' failure to comply with appropriate standards including, but not limited to, providing custodial care with and requiring use of personal

protective equipment and employing reasonable policies and procedures for isolating residents and employees that either tested positive for, or were suspected to have COVID-19, away from uninfected residents and employees, exposed Santiago Gonzalez to the high probability of exposure to COVID-19, resulting in injury and/or death.

49.   At all times mentioned above, REDWOOD SPRINGS and DOES 1-50, knowingly disregarded the above-stated peril and high probability of injury. As a result, they failed to comply with their duties under the applicable standard of care, including, but not limited to the aforesaid manner, as described in Paragraph 16, above.

50.   In addition to those failures/breaches of care described in paragraph 16, Defendants also made financial decisions at the expense of the safety of their residents and employees, when they decided to limit spending on cleaning/disinfectant supplies and personal protective equipment, including face masks, gloves and gowns. They further decided not to incur the expense of employing healthy non-infected staff and rather encouraged and required infected and/or suspected infected staff to go to work at REDWOOD SPRINGS. As a result and as was predictable, Santiago Gonzalez and many other residents and staff became infected with COVID-19 and were injured and/or died.

51.   Plaintiffs are informed and believe, and hereby allege, that at all times, REDWOOD SPRINGS was under a statutory duty to comply with all applicable federal and state laws and regulations governing nursing homes in California, which were a contributing factor to the death of Santiago Gonzalez. Those laws include, but are not limited to: 42 CFR sections 483.10 (a) & (e), 483.21, 483.25 and 483.30; CA Health & Safety Code sections 1279.6, 1337.1 and 1599.1 (a); Title 22 CCR sections 72311, 72315, 72329 (a), 72501 (e), 72517, 72523, 72527 (a)(11), 72537, 72539, and 72541; 42 USC section 1396r (b)(2).

52.   REDWOOD SPRINGS and DOES 1-50 have acted in conscious disregard of the probability of injury to Santiago Gonzalez, because he was helpless to protect himself from exposure to the COVID-19 virus and Defendants' failure and refusal to provide such basic care and services required by law is despicable. As such, Defendants have acted with malice.

///

///

53.   Based upon the above, Defendants and DOES 1-50 have acted despicably and have subjected Santiago Gonzalez to cruel and unjust hardship in conscious disregard of his rights and safety. As such, Defendants have each acted with oppression.

54.   Based upon the above, punitive damages should be assessed against Defendants and DOES 1-50, in a sum according to proof at the time of trial.

## VI.

### THIRD CAUSE OF ACTION
**Wrongful Death**
**(Against All Defendants and DOES 1-50)**

55.   Plaintiffs hereby incorporate the allegations asserted in Paragraphs 1-54 above as set forth below.

56.   Plaintiffs are the sole surviving heirs and children of Santiago Gonzalez.

57.   Defendants, and each of them, owed statutory and common law duties to Santiago Gonzalez.

58.   Defendants, and each of them, failed to meet the statutory and common law duties to Santiago Gonzalez by failing to supervise, assist, care for, assess, diagnose and treat the injuries suffered by Santiago Gonzalez at the REDWOOD SPRINGS facility.  Specifically, Defendants, and each of them, failed to meet their statutory and common law duties to Santiago Gonzalez as more fully set forth above.

59.   As a proximate result of the common law negligence, neglect (as that term is defined in Welfare & Institutions Code section 15610.57), and physical abuse (as that term is defined in Welfare & Institutions Code section 15610.63) on the part of Defendants, and each of them, Santiago Gonzalez died on April 10, 2020.

60.   Prior to the death of Santiago Gonzalez, Plaintiffs enjoyed the love, society, comfort and attention of their father, Santiago Gonzalez.  As a proximate result of the negligent acts of Defendants, and each of them, their neglect (as that term is defined in Welfare & Institutions Code section 15610.57) of Santiago Gonzalez, as alleged herein, Plaintiffs have sustained loss of the love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Santiago Gonzalez and funeral and burial expenses in a sum according to proof at trial, within the jurisdictional limits of this Court.

# VII.

## PRAYER

Wherefore, Plaintiffs pray for judgment and damages as follows:

1. For general damages according to proof;

2. For special damages according to proof;

3. For general damages for Santiago Gonzalez's pain and suffering pursuant to Welfare & Institutions Code Section 15657(b) (as to the First and Second Causes of Action only);

4. For attorneys' fees pursuant to Welfare & Institutions Code Section 15657(a) (as to the First and Second Causes of Action only);

5. For punitive and exemplary damages (as to the First and Second Causes of Action only);

6. For costs of suit; and

7. For such other and further relief as the Court deems just and proper.

Dated: July 14, 2020

BARADAT & PABOOJIAN, INC.

By:

Warren R. Paboojian
Jason S. Bell
Attorneys for Plaintiffs
JAIME GONZALEZ; JORGE
GONZALEZ; AMERICO GONZALEZ;
MARISUSI RODRIGUEZ; RAMONA
RODRIGUEZ; ROBERTO GONZALEZ;
TARCILA REVELES; and SANTIAGO
GONZALEZ

AT & PABOOJIAN
t Alluvial Avenue
CA 93711



# Superior Court of the State of California

### COUNTY OF TULARE
CIVIL LEGAL PROCESSING
221 S. Mooney Blvd., Room 201
Visalia, California 93291
Telephone: (559) 730-5000

## ALTERNATIVE DISPUTE RESOLUTION PACKAGE

This is Tulare County Superior Court's Alternative Dispute Resolution (ADR) Package. The package contains:

1. The court's current ADR Referral List;

2. Tulare County Superior Court's Local Rule 600 on Case Management Conferences;

3. Information about ADR.

At the time a civil complaint is filed, the clerk will issue a hearing date and time for the Case Management Conference (CMC). This information is placed on the front page of the complaint. Plaintiff must serve notice of the CMC hearing and this ADR Package on each defendant with the summons and complaint.

**All parties appearing in the action are ordered to meet and confer prior to the CMC date regarding an agreed upon mediator and mediation date and time under Local Rule 600(a)(5).**

Each party must file and serve a CMC statement on Judicial Council form CM-110 no later than 15 calendar days before the CMC hearing under California Rules of Court, rule 3.725 and Local Rule 600(a)(6).

Counsel and unrepresented parties are required to be present, either in person or by CourtCall (See Local Rule 108 regarding CourtCall), at the CMC hearing and have authority to enter into a mediation agreement if the parties have agreed to mediate. Each party appearing shall also have sufficient information and understanding of the case in order to evaluate it accurately.

**Please be advised that monetary and/or terminating sanctions shall be imposed against parties and counsel who fail to comply with state and local rules regarding case management conferences without good cause.**

## CHAPTER 6 – MANAGING CIVIL CASES

Rule 600 – Case Management Conference

(a)   The Judicial Council has implemented state rules for the management of civil cases (Cal. Rules of Court, Chapter 2 Trial Court Management of Civil Cases, rules 10.900, et. Seq.).

In recognition of the state rules requiring the court to implement a case management Plan, the court elects to follow California Rules of Court, rule 3.714.

(1) At the time the complaint is filed, the clerk will issue a hearing date for the Case Management Conference (CMC) to plaintiff that is no less than 120 days after the filing of the complaint. The clerk will also provide the Plaintiff with the court's Alternative Dispute Resolution (ADR) package including the list of the names of the mediators who have applied and met the court's mediation/arbitration qualifications pursuant to the program adopted by the court under California Rules of Court, rule 10.781. Plaintiff must serve a Notice of CMC and the ADR package on each defendant along with the summons and complaint.

(2) Any party who files and serves a cross-complaint prior to the CMC must serve on each cross-defendant who is a new party to the action, a copy of the Notice of CMC and the ADR package along with the summons and cross-complaint. If a new cross-defendant is served after the initial CMC, the cross-complainant must serve the new cross-defendant with notice of any pending CMC, any assigned mediation date, trial, or settlement conference dates, and any other dates set by the court or orders made at the CMC.

(3) If the plaintiff adds a new defendant or identifies a fictitiously named defendant after the initial CMC, along with the summons and complaint, plaintiff must serve the newly named defendant with notice of any pending CMC, any pending mediation date, any assigned trial and settlement conference dates, and any other dates set by the court or orders made at the CMC.

(4) Proof of service of Notice of the CMC must be filed with the court within 60 days from the date the complaint is filed and may be included in the proof of service of the summons and complaint or cross-complaint.

(5) This court has found that mediation is highly desirable and orders the parties to meet and confer prior to the CMC date regarding an agreed upon mediator and mediation date and time. A list of mediators and their fees are provided by the court in its ADR package. The mediator must be agreed upon before the CMC and the mediation date and time cleared with the mediator so the court may enter the date in the court's minute order.

(6) Under California Rules of Court, rule 3.725, no later than 15 calendar days before the date set for the CMC, each party must file a CMC statement and serve it on all other parties in the case. Parties must use the mandatory CMC Statement (Judicial Council form CM-110). All applicable items on the form must be completed.

(7) In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

(b) Presence Required – Counsel and unrepresented parties are required to be present, either in person or by telephonic appearance pursuant to The Superior Court of Tulare County, Local Rules, rule 108, and must have: (1) sufficient information and understanding of the case to evaluate it accurately, and (2) sufficient authority to enter into binding agreements such as the diversion of the case to arbitration, including binding arbitration, the setting of a trial date and mandatory settlement conference date, the dismissal of doe defendants or other parties, and the setting of a further case management conference.

(c) Compliance – Failure to attend the case management conference will result in the court making whatever orders and imposing whatever sanctions as may be necessary and appropriate to obtain compliance with these rules, including but not limited to, a waiver of the right to a jury trial and a waiver of the right to object to a referral to arbitration or other alternate dispute resolution procedure.

(d) Waiver of Notice – When all parties are present at the case management conference and a trial date and settlement conference dates are agreed to by the parties or ordered by the court, such presence is an effective waiver of a separate or formal notice of settlement conference and trial date. (01/01/03) (Revised 01/01/07, 01/01/09) (07/01/11)

## Alternative Dispute Resolution

There are different processes available to settle lawsuits without having to go to trial. The most common forms of ADR are Mediation, Arbitration, and Case Evaluation. In ADR, a trained, impartial person decides disputes or helps the parties reach resolutions of their disputes for themselves. The persons are neutrals who are normally chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

## Advantages of ADR

- Often quicker than going to trial, a dispute may be resolved in a matter or days or weeks instead of months or years.

- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.

- Can permit more participation, allowing the parties the opportunity to tell their side of the story with more control over the outcome.

- Allows for flexibility in choice of ADR processes and resolution of the dispute.

- Fosters cooperation by allowing the parties to work together with the neutral to resolve the dispute and mutually agree to a remedy.

- Often less stressful than litigation. Most people have reported a high degree of satisfaction with ADR.

Page 3 of 5

Because of these advantages, many parties choose ADR to resolve disputes instead of filing a lawsuit. Even after a lawsuit has been filed, the court can refer the dispute to a neutral before the lawsuit becomes costly. ADR has been used to resolve disputes even after trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute. The neutral may charge a fee for his or her services. If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs, such as attorney's fees and expert fees.

Lawsuits must be brought within specified periods of time, known as Statutes of Limitations. Parties must be careful not to let a Statute of Limitation run while a dispute is in an ADR process.

## The Most Common Types of ADR

### Mediation

In mediation, the mediator (a neutral) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do. It is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other. Mediation normally leads to better relations between the parties and to lasting resolutions. It is particularly effective when parties have a continuing relationship, such as neighbors or businesses. It also is very effective where personal feelings are getting in the way of a resolution. Mediation normally gives the parties a chance to freely express their positions. Mediation can be successful for victims seeking restitution from offenders. When there has been violence between the parties, a mediator can meet separately with the parties.

### Arbitration

In arbitration, the arbitrator (a neutral) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation whereby the mediator helps the parties reach their won resolution. Arbitration normally is more informal, quicker, and less expensive than a lawsuit. In a matter of hours, an arbitrator often can hear a case that otherwise may take a week in court to try. This is because the evidence can be submitted by documents rather than by testimony.

**There are Two Types of Arbitration in California**

1. **Private arbitration** by agreement of the parties involved in the dispute. This type takes place outside of the court and normally is binding. In most cases, "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an opportunity to appeal the decision.

2. **Judicial arbitration** ordered by the court. The arbitrator's decision is not binding unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not receive a more favorable result at trial, the party may have to pay a penalty.

| ADR REFERRAL LIST<br>January 2020 | | |
|---|---|---|
| **NAME** | **HOURLY RATE** | **PROFILE INFORMATION** |
| Honorable Howard R. Broadman (Ret.)<br>300 N. Willis<br>Visalia, CA. 93291<br>Phone: (559) 738-1800<br>Fax: (559) 738-1102<br>Email:<br>judgebroadman@judgebroadman.com | $475.00 per hour | Click Here<br><br>Resume on file |
| Kenneth M. Byrum<br>5080 California Ave #200<br>Bakersfield, CA 93309<br>Phone: (661) 861-6191<br>Fax: (661) 861-6190<br>Email: ken@kmbmediation.com | $300.00 per hour | Click Here<br><br>Resume on file |
| Russell D. Cook<br>1233 West Shaw, Suite 100<br>Fresno, CA 93711<br>Phone: (559) 225-2510<br>Fax: (559) 229-3941<br>Email: rdcook@rdcooklaw.com | $285.00 per hour | Click Here<br><br>Resume on file |
| James D. Emerson<br>802 West Pinedale, Suite 104<br>Fresno, CA 93711<br>Phone: (559)432-7641<br>Fax:     (559)432-7639<br>Email: jemerson@lawemerson.com | $300.00 per hour | Click Here<br><br>Resume on file |
| M. Troy Hazelton<br>3585 W. Beechwood Ave, Suite 101<br>Fresno, CA 93711<br>Phone: (559) 431-1300<br>Fax: (559) 431-1442<br>Email: Thazelton@pgllp.com | $195.00 per hour | Click Here<br><br>Resume on file |
| Lee M. Jacobson<br>1690 W. Shaw Avenue, Suite 201<br>Fresno, CA 93711<br>Phone: (559) 448-0400<br>Fax: (559) 448-0123<br>Email: lmj@jhnmlaw.com | $290.00 per hour | Click Here<br><br>Resume on file |

| | | |
|---|---|---|
| Daniel O. Jamison<br>8080 North Palm Avenue<br>Fresno, CA 93711<br>Phone: (559)432-4500<br>Fax: (559)432-4590<br>Email: djamison@daklaw.com | $320 per hour<br>including travel time | Click Here<br><br>Resume on file |
| Honorable Patrick J. O'Hara (Ret.)<br>300 N. Willis<br>Visalia, CA. 93291<br>Phone: (559) 429-4570<br>Fax: (559) 429-4575<br>Email: judgeohara@judgeohara.com<br>Website: www.judgeohara.com | $475.00 per hour | Click Here<br><br>Resume on file |
| Leah Catherine Launey<br>42490 Kaweah River Drive<br>Three Rivers, CA 93271<br>Phone: (559) 561-4270<br>Fax: (559) 561-4273<br>Email: lclauney@lanneymediation.com | $175.00 per hour<br>2 hour minimum | Click Here<br><br>Resume on file |
| Kevin G.Little<br>1099 E. Champlain Drive, Suite A-124<br>Fresno, CA 93720<br>Phone: (559)708-4750<br>Fax: (559)420-0830<br>Email: kevinglittle@yahoo.com | $200.00 per hour<br>2 hour minimum | Click Here<br><br>Resume on file |
| Linda Luke<br>632 W. Oak Avenue<br>Visalia, CA. 93291<br>Phone: (559) 733-9505<br>Fax: (559) 733-3910<br>Email: linda.luke@icloud.com | $275.00 per hour | Click Here<br><br>Resume on file |
| Douglas E. Noll<br>P.O. Box 2336<br>Clovis, CA. 93613<br>Phone: 800-785-4487<br>Fax: 877-765-1353<br>Email: doug@nollassociates.com | $400 per hour<br>4 hour minimum | Click Here<br><br>Resume on file |
| Honorable Robert. H. Oliver (Ret.)<br>5260 N. Palm Ave, Fourth Floor<br>Fresno, CA 93704<br>Phone: (559)432-5400 or (559)313-6285<br>Fax: (559) 432-5620<br>Email: roliver@bakermanock.com | $400.00 per hour (2<br>Hour Minimum) | Click Here<br><br>Resume on file |
| James M. Phillips | $340.00 per hour | Click Here |

| | | |
|---|---|---|
| 8080 N. Palm Ave, Suite 101<br>Fresno, CA 93711<br>Phone: (559) 261-9340<br>Fax: (888) 974-4321<br>Email: phillipsgp@aol.com | | Resume on file |
| Michael Renberg<br>1540 E. Shaw Ave, Suite 123<br>Fresno, CA 93710<br>Phone: (559) 431-6300<br>Fax: (559) 432-1018<br>Email: mrenberg@prcelaw.com | $240.00 per hour | Click Here<br><br>Resume on file |
| Laurie Quigley Saldana<br>791 Price Street. #323<br>Pismo Beach, CA. 93449<br>Phone: (559) 730-1812<br>Email: laurie@mediationcentral.net | $350.00 per hour | Click Here<br><br>Resume on file |
| Tom Simonian<br>1100 W. Center Ave<br>Visalia, CA. 93291<br>Phone: (559) 732-7111<br>Fax: (559)732-1540 | $290.00 per hour | Click Here<br><br>Resume on file |
| Andrew R. Weiss<br>7109 North Fresno Street, Suite 250<br>Fresno, CA 93720<br>Phone: (559) 438-2080<br>Cell: (559) 259-4663<br>Email: aweiss@weissmartin.com | $300.00 per hour | Click Here<br>Resume on file |

2729

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

JUL 15 2020

STEPHANIE CAMERON, CLERK
BY:   April Mathews

1  Warren R. Paboojian, No. 128462
   wrp@bplaw-inc.com
2  Jason S. Bell, No. 213234
   jsb@bplaw-inc.com
3  BARADAT & PABOOJIAN, INC.
   720 West Alluvial Avenue
4  Fresno, California 93711
   Telephone: (559) 431-5366
5  Facsimile: (559) 431-1702

6  Attorneys for Plaintiffs
   JAIME GONZALEZ, individually
7  and as Successor in Interest to the
   Estate of Santiago Gonzalez, deceased;
8  JORGE GONZALEZ; AMERICO GONZALEZ;
   MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ;
9  ROBERTO GONZALEZ; TARCILA REVELES;
   and SANTIAGO GONZALEZ

10

11                    SUPERIOR COURT OF CALIFORNIA

12                         COUNTY OF TULARE

13  JAIME GONZALEZ, individually and as       )   Case No. 283547-
    Successor in Interest to the Estate of Santiago )
14  Gonzalez, deceased; JORGE GONZALEZ;       )   **DECLARATION OF SUCCESSOR IN**
    AMERICO GONZALEZ; MARISUSI              )   **INTEREST (CCP §377.32)**
15  RODRIGUEZ; RAMONA RODRIGUEZ;            )
    ROBERTO GONZALEZ; TARCILA              )
16  REVELES; and SANTIAGO GONZALEZ,         )
                                             )
17              Plaintiffs,                  )
                                             )
18     vs.                                   )
                                             )
19  REDWOOD SPRINGS HEALTHCARE              )
    CENTER; SPRUCE HOLDINGS, LLC; and       )
20  DOES 1 to 50, inclusive,                 )
                                             )
21              Defendants.                  )
    _____)
22

23      I, JAIME GONZALEZ, declare:

24      1.      Santiago Gonzalez died on April 10, 2020, in Visalia, California.

25      2.      No proceeding is now pending in California, nor is one contemplated, for the

26  administration of the decedent's estate.

27  ///

28  ///

---

DECLARATION OF SUCCESSOR IN INTEREST          -1-                    FILE NO. 2729

3.     I am the decedent's successor in interest as defined in section 377.11 of the California Code of Civil Procedure, in that I am the decedent's biological son, and therefore succeed to the decedent's cause of action in this action.

4.     No other person has a superior right to commence an action or proceeding, or to be substituted for the decedent in this pending action or proceeding, in order to recover damages incurred by his estate and made recoverable by the provisions of California Code of Civil Procedure section 377.34.

5.     Attached hereto as "Exhibit A", is a certified copy of the decedent's death certificate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge.

Dated: 7/14/20

JAIME GONZALEZ

# EXHIBIT "A"

**OFFICE OF VITAL RECORDS**

# COUNTY OF TULARE

**TULARE, CALIFORNIA**

3052020079529 STATE FILE NUMBER

**CERTIFICATE OF DEATH**
USE BLACK INK ONLY / NO ERASURES, WHITE OUTS OR ALTERATIONS
VS-11 (REV 3/98)

3202054000892 LOCAL REGISTRATION NUMBER

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) | SANTIAGO |
| 2. MIDDLE | - |
| 3. LAST (Family) | GONZALEZ |
| AKA, ALSO KNOWN AS – Include full AKA FIRST, MIDDLE, LAST) | - - - |
| 4. DATE OF BIRTH mm/dd/ccyy | 08/25/1933 |
| 5. AGS Yrs. | 86 |
| IF UNDER ONE YEAR Months / Days | |
| IF UNDER 24 HOURS Hours / Minutes | |
| 6. SEX | M |
| 9. BIRTH STATE/FOREIGN COUNTRY | MEXICO |
| 10. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | X YES [ ] NO [ ] UNK |
| 12. MARITAL STATUS/SRCP at time of | WIDOWED |
| 7. DATE OF DEATH mm/dd/ccyy | 04/10/2020 |
| 8. HOUR (24 Hours) | 1535 |
| 13. EDUCATION – Highest Level/Degree (see worksheet on back) | 08 |
| 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? (If yes, see worksheet on back) | X YES MEXICO |
| 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) | MEXICAN |
| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | FARM LABORER |
| 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | AGRICULTURE |
| 19. YEARS IN OCCUPATION | 70 |
| 20. DECEDENT'S RESIDENCE (Street and number, or location) | 1925 E. HOUSTON AVE |
| 21. CITY | VISALIA |
| 22. COUNTY/PROVINCE | TULARE |
| 23. ZIP CODE | 93292 |
| 24. YEARS IN COUNTY | 53 |
| 25. STATE/FOREIGN COUNTRY | CA |
| 26. INFORMANT'S NAME, RELATIONSHIP | JAIME GONZALEZ, SON |
| 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) | 12652 FIRST DRIVE, CUTLER, CA 93615 |
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | - |
| 29. MIDDLE | - |
| 30. LAST (BIRTH NAME) | - |
| 31. NAME OF FATHER/PARENT—FIRST | GUADALUPE |
| 32. MIDDLE | - |
| 33. LAST | GONZALEZ ARELLANO |
| 34. BIRTH STATE | MEXICO |
| 35. NAME OF MOTHER/PARENT—FIRST | MARIA |
| 36. MIDDLE | JESUS |
| 37. LAST (BIRTH NAME) | MEDRANO RAMIREZ |
| 38. BIRTH STATE | MEXICO |
| 39. DISPOSITION DATE mm/dd/ccyy | 04/24/2020 |
| 40. PLACE OF FINAL DISPOSITION | SMITH MOUNTAIN CEMETERY 42088 ROAD 100, DINUBA, CA 93618 |
| 41. TYPE OF DISPOSITION(S) | BU |
| 42. SIGNATURE OF EMBALMER | ▶ CESAR TERAN |
| 43. LICENSE NUMBER | EMB9401 |
| 45. LICENSE NUMBER | FD2106 |
| 44. NAME OF FUNERAL ESTABLISHMENT | STERLING & SMITH FUNERAL HOME |
| 46. SIGNATURE OF LOCAL REGISTRAR | ▶ KAREN HAUGHT, MD |
| 47. DATE mm/dd/ccyy | 04/15/2020 |
| 101. PLACE OF DEATH | REDWOOD SPRINGS HEALTHCARE CENTER |
| 102. IF HOSPITAL, SPECIFY ONE | [ ] IP [ ] ER/OP [ ] DOA |
| 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | X Nursing Home/LTC [ ] Decedent's Home [ ] Other |
| 104. COUNTY | TULARE |
| 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 1925 E HOUSTON AVE |
| 106. CITY | VISALIA |

**107. CAUSE OF DEATH** — Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

| | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (A) CARDIAC ARREST | MIN | X YES [ ] NO |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (B) COVID-19 | DAYS | 20-4-319-40 |
| | (C) | | 109. BIOPSY PERFORMED? [ ] YES X NO |
| | (D) | | 110. AUTOPSY PERFORMED? [ ] YES X NO |
| | | | 111. USED IN DETERMINING CAUSE? [ ] YES [ ] NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | NONE |
|---|---|
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | NO |
| 113A. IF FEMALE, PREGNANT IN LAST YEAR? [ ] YES [ ] NO [ ] UNK | |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|---|
| (A) Decedent Attended Since mm/dd/ccyy 05/21/2018 | (B) Decedent Last Seen Alive mm/dd/ccyy 04/09/2020 | ▶ ABBAS SYED HASNAIN M.D. | A144151 | 04/14/2020 |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | | ABBAS SYED HASNAIN M.D. 222 WEST HENDERSON AVE, PORTERVILLE, CA 93257 | | |

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH [ ] Natural [ ] Accident [ ] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be determined | [ ] YES [ ] NO [ ] UNK | | |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) | | | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER | |

| STATE REGISTRAR | A | B | C | D | E | | | | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | *010001004500990* | | | | |

**CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF TULARE**

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL STATISTICS OFFICE, COUNTY OF TULARE HEALTH AND HUMAN SERVICE AGENCY.

DATE ISSUED    APR 20 2020

Karen Haught, M.D., M.P.H., Tulare County Health Officer
Registrar of Vital Statistics

This copy is not valid unless prepared on an engraved border, displaying date, seal and signature of the County Health Officer.

* 0 0 0 3 8 5 3 7 3 *

