1   William C. Wilson, SBN: 149683
2   Kim S. Cruz, SBN: 177406
    Ryan G. Canavan, SBN: 313990
3   WILSON GETTY LLP
4   12555 High Bluff Drive, Suite 270
    San Diego, California 92130
5   Telephone:       858.847.3237
6   Facsimile:       858.847.3365
    Attorneys for Defendant SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS
7   HEALTHCARE CENTER (erroneously sued and served as separate entities)

8

9

10                      **UNITED STATES DISTRICT COURT**

11               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12   | JAIME GONZALEZ, individually and | Case No. 1:20-cv-01260-NONE-EPG |

JAIME GONZALEZ, individually and as Successor in Interest to the Estate of Santiago Gonzalez, deceased; JORGE GONZALEZ; AMERICO GONZALEZ; MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ; TARCILA REVELES; and SANTIAGO GONZALEZ,

                        Plaintiffs,

vs.

REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC; and DOES 1 to 50, inclusive,

                        Defendants.

Case No. 1:20-cv-01260-NONE-EPG

**DEFENDANT, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f)) PORTIONS OF PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Complaint filed:  July 15, 2020

Hearing Date: October 30, 1010
Hearing Time: 9:30 a.m.
Courtroom 4 (7th floor)
Complaint filed:  July 15, 2020

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

        PLEASE TAKE NOTICE that on October 30, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 4  of the above entitled court, located at 2500 Tulare Street, Fresno, California 93721, Defendant, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER (erroneously sued and served as

---
**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
Case No. 1:20-cv-01260-NONE-EPG

separate entities), will and hereby do move the Court for a dismissal from Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

(1)  As to the First Cause of Action for Elder Abuse; Second Cause of Action for Willful Misconduct; and Third Cause of Action for Wrongful Death, Plaintiffs fail to state a claim against Defendant as Defendant has immunity with respect to such claims under the Public Readiness and Emergency Preparedness Act ("PREP Act") and Declarations of Health and Human Services Secretary Alex Azar invoking the Act for the COVID-19 pandemic.  Pursuant to Federal Rules of Civil Procedure, Rule (12)(6), Defendant requests this Court issue an Order of Dismissal.

(2) As to the First Cause of Action for Elder Abuse; Second Cause of Action for Willful Misconduct; and Third Cause of Action for Wrongful Death, Plaintiffs fail to state a claim against Defendant pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) on the grounds that the PREP Act provides that exclusive jurisdiction for any claim is in the United States District Court for the District of Columbia.  Defendant requests this Court issue an Order of dismissal;

(3)     As to the First Cause of Action for Elder Abuse, Plaintiffs fail to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant requests this Court issue an Order of dismissal.

(4)     As to the Second Cause of Action for Willful Misconduct, Plaintiffs fail to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant requests this Court issue an Order of dismissal; and

(5)     As to the Third Cause of Action for Wrongful Death, Plaintiffs fail to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant requests this Court issue an Order of dismissal.

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**Case No. 1:20-cv-01260-NONE-EPG**

For these reasons collectively, as well as separately and independently, Defendant should be dismissed from Plaintiffs' Complaint.

Moreover, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendant will and hereby does move the Court for order striking out the immaterial, impertinent and scandalous matter from Plaintiffs' Complaint.  Specifically, if this Court declines to grant this Motion to Dismiss Plaintiffs' Complaint in its entirety or any of the causes of action alleged, Defendant moves this Court for an order striking out all allegations pertaining to the alleged failure of Defendant to utilize PPE, and allegations relating to COVID-19 testing.  These claims are barred under the PREP Act.  Defendant further seeks an order striking Plaintiffs' claims for attorney's fees and punitive damages on the grounds that Plaintiffs have failed to plead facts sufficient to support these damage claims.

Specifically, Defendant hereby moves the Court for an Order striking the following portions of Plaintiffs' Complaint:

(1)     Pg. 4, line 5:  ". . . requiring employees/visitors to use Personal Protective Equipment (face masks, gloves and gowns);

(2)     Pg. 4, line 11: ". . . including the distribution and use of Personal Protective Equipment . . .";

(3)     Pg. 5, line 23: "1. Failure of REDWOOD SPRINGS to provide staff and others at the facility Personal Protective Equipment.";

(4)     Pg. 5, lines 24-25: "2. Failure of REDWOOD SPRINGS to require the staff and others while at the facility to use and/or monitor the use of Personal Protective Equipment.";

(5)     Pg. 6, lines 7-9: "9.  Failure to timely test Santiago Gonzalez and other residents and staff for COVID-19 in order to timely isolate and separate the infected individuals from non-infected individuals.";

(6)     Pg. 7, line 10: ". . . personal protective equipment . . .";

(7)     Pg. 12, line 21: "wherein infected workers lacked personal protective

equipment . . . ";

(8)      Pg. 12, line 28-Pg. 13, line 1:  ". . . requiring use of personal protective equipment . . ."

(9)      Pg. 13, lines 11-12: ". . . and personal protective equipment, including masks, gloves and gowns . . ."

(10)      Pg. 15, lines 6-7, Prayer for Relief: "3.  For general damages for Santiago Gonzalez' pain and suffering pursuant to Welfare & Institutions Code Section 15657(b) (as to the First and Second Causes of Action only);"

(11)      Pg. 15, lines 8-9, Prayer for Relief: "4. For attorney's fees pursuant to Welfare and Institutions Code Section 15657(a) (as to the First and second Causes of Action only);" and

(12)      Pg. 15, line 10, Prayer for Relief: "5. For punitive and exemplary damages (as to the First and Second Causes of Action only)."

This Court has original jurisdiction pursuant to 28 USC §§ 1131 and 1442(a) and which may be removed to this court pursuant to 28 USC §§1441 and 1446 based on federal question and federal officer jurisdiction.  (See Defendant's Notice of Removal and exhibits thereto filed with this Court on September 4, 2020)

This motion is made following communication with Plaintiffs' counsel pursuant to the Standing Order of the United States District Court for the Eastern District of California and the exhaustion of the parties' meet and confer efforts. These efforts are set forth in more detail in the Declaration of Kim S. Cruz and Exhibit "L" thereto, filed concurrently herewith.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Kim S. Cruz, Esq. and exhibits thereto filed concurrently herewith, the concurrently filed Request for Judicial Notice and exhibits attached thereto, and any reply brief submitted by Defendant.

///

///

1    Lastly, this motion is based upon the pleadings filed herein, and any other such

2   oral and/or documentary evidence or argument which may be presented at, before, or

3   during the hearing on this motion.

4

5   Dated: September 25, 2020                          WILSON GETTY LLP

6

7                                          By:   /s/ Kim S. Cruz

8                                                William C. Wilson
                                                 Kim S. Cruz
9
                                          Attorneys for Defendant SPRUCE HOLDINGS,
10                                        LLC dba REDWOOD SPRINGS HEALTHCARE
                                          CENTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**Case No. 1:20-cv-01260-NONE-EPG**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES     1

MEMORANDUM OF POINTS AND AUTHORITIES     1

    I.     INTRODUCTION     1

    II.     LEGAL STANDARD     3

    III.     PLAINTIFFS' CLAIMS ARE BARRED BY THE IMMUNITY AFFORDED TO DEFENDANT UNDER THE PREP ACT     6

    IV.     PLAINTIFFS' REMEDY FOR THEIR CLAIMS RELATING TO PPE AND COVID-19 TESTING IS TO FILE A CLAIM UNDER 42 U.S.C. §247d-6e     11

    V.     PLAINTIFFS' ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW     12

    VI.     PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR     19

    VII.     PLAINTIFFS' CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED     20

    VIII.     PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS FOR PRE-DEATH PAIN AND SUFFERING, ATTORNEY'S FEES AND PUNITIVE DAMAGES     20

    IX.     CONCLUSION     22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 173 L. Ed.2d 868, 883 (2008) ...................................................................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct., 1955, 1965, 167 L. Ed. 2d 929 (2007) ..........................................................................................................................4

*Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ..................................................................4, 5

*Carter v. Prime Healthcare Paradise Valley, LLC*. (2011) 198 Cal.App.4th 396, 407....14

*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771 .......................12, 13, 14, 15

*De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978) ...................................................3

*Delaney v. Baker* (1999) 20 Cal.4th 23 ...................................................................14, 15

*Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ....................................................5

*Mack v. Soung* (2000) 80 Cal.App.4th 966 ......................................................................14

*Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989)........................................5

*Moran v. Peralta Comty. Coll. Dist.*,825 F. Supp. 891, 894-95 (N.D. Cal. 1993)..............5

*Nogart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390 ..........................................................20

*SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-727 (C.D. Cal.1995)................3

*Strigliabotti v. Franklin Resources, Inc.*,398 F. Supp. 2d. 1094, 1097 (N.D. Cal. 2005)...5

*Susilo v. Wells Fargo Bank, N.A.*, 796 F.Supp. 2d 1177, 1196 (C.D. CA 2011) ...............5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).......................5

*U.S. ex rel. Modglin v. DJO Global Inc.* (2014 C.D. CA) 48 F.Supp.3d 1362, 1370.........5

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 90, 973-74 (9th Cir. 2010) ....................5

*Zinermon v. Burch*, 494 U.S. 113, 118 (1990) ..................................................................3

## FEDERAL STATUTES

42 U.S.C. §§247d-6d(d)(1) and (e)(1) ..............................................................................11

42 U.S.C. §247d-6d (i)(2) and (5) .......................................................................................8

42 U.S.C. §247d-6d (i)(6) ...................................................................................................9

42 U.S.C. §247d-6d(a)(1) ...................................................................................................6

42 USC § 247d-6d (a)(2)(B)...............................................................................................10

42 USC § 247d-6d (i) (1) ................................................................................7

42 USC § 247d-6d (i)(7) ................................................................................7

**CALIFORNIA STATE STATUTES**

California *Civil Code* § 3294(a) ....................................................................21

California *Civil Code* § 3294(b) ....................................................................18

California *Welfare & Institutions* Code § 15610.57 ......................................12

California *Welfare and Institutions Code* §15600, et seq..............................12

California *Welfare and Institutions Code* §15610.07 ....................................12

California *Welfare and Institutions Code* §15657(c) ...............................18, 20

California *Welfare and Institutions Code* Section 15657 ..............................13

**RULES**

Fed. R. Civ. Proc. 12(f)..................................................................................5

**REGULATIONS**

21 CFR 878.4040.............................................................................................8

**TABLE OF AUTHORITIES**
**Case No. 1:20-cv-01260-NONE-EPG**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On July 15, 2020, Plaintiffs, Jaime Gonzalez, individually and as Successor in Interest to the Estate of Santiago Gonzalez, deceased; Jorge Gonzalez; Americo Gonzalez; Marisusi Rodriguez; Ramona Rodriguez; Roberto Gonzalez; Tarcila Reveles; and Santiago Gonzalez, filed this action against defendant, Spruce Holdings, LLC dba Redwood Springs Healthcare Center ("Redwood Springs"), asserting causes of action for  (1) Elder Abuse; (2) Willful Misconduct; and (3) Wrongful Death.

This case involves the death of Santiago Gonzalez.  Plaintiffs' allege that Mr. Gonzalez death on April 10, 2020 was due to the COVID-19 virus, which he contracted during his admission to Redwood Springs. (See Plaintiffs' Complaint, pg. 1, ¶ 1.)

Based on information and belief, Plaintiffs allege that prior to April 3, 2020, Defendant knew, or should have known, that the elderly population was vulnerable to becoming deathly ill if infected with COVID-19.  Despite this knowledge and the safety procedures and protocols being issued by the local, state and federal governments, to help prevent the spread of COVID-19, Defendant, either did not implement the safety procedures or negligently failed to follow and monitor and/or disregarded such procedures. (Complaint, ¶ 16.)

Plaintiffs also allege that once Redwood Springs became aware that employees and residents were infected with COVID-19, it failed to immediately notify other employees and family members of the residents of the outbreak. Plaintiffs allege, based upon information and belief, that the facility continued to require and encourage employees to enter the facility and continue to work, despite reporting they were symptomatic or COVID-19 positive. (Complaint, ¶ 11.)

The Complaint sets forth that on or about April 3, 2020, Santiago Gonzalez tested positive for COVID-19. Plaintiffs contend that Santiago Gonzalez and other patients at the facility contracted COVID-19 due to Defendants' failure to properly and adequately care for and protect the elderly patients in their care. (Complaint, ¶ 13.) On April 10,

2020, Plaintiffs were notified that Mr. Gonzalez had passed away. Plaintiffs contend that Mr. Gonzalez' death was the result of Defendants' failure to act, care for, protect and assist him. (Complaint, ¶ 14.)

It is further alleged that Redwood Springs failed to provide supervision, care and assistance by sufficient numbers of personnel; failed to sufficiently budget for personal protective equipment, cleaning/disinfecting supplies, and sufficient healthy staffing to meet the needs of and protection of their residents; failed to conduct an ongoing, accurate, and comprehensive assessment of Mr. Gonzalez' needs; and failed to supervise and provide assistance and to timely notify a physician and Santiago Gonzalez's family and legal representative of material changes in his condition and needs. (Complaint, ¶s 18-23 and 50.)

The Complaint also alleges that Redwood Springs was under a statutory duty to comply with all applicable federal and state laws and regulations governing nursing homes in California, which were a contributing factor to the death of Santiago Gonzalez. These laws and regulations include, but are not limited to: 42 CFR sections 483.10 (a) & (e), 483.21, 483.25 and 483.30; California Health & Safety Code sections 1279.6, 1337.1 and 1599.1 (a); Title 22 of the California Code of Regulations sections 72311, 72315, 72329 (a), 72501 (e), 72517, 72523, 72527 (a)(ll), 72537, 72539, and 72541; and 42 USC section 1396r (b)(2). (Complaint, ¶ 51)

Plaintiffs' allegations can be summarized as falling into the following categories:   (1) Failure to provide and ensure proper use of PPE to mitigate the spread of COVID-19 at the facility; (2) Failure to timely administer a COVID-19 test to Mr. Gonzalez; (3) Failure to isolate COVID-19 positive residents to prevent spread of the virus at the facility; (4) Failure to monitor staff for infection and prevent infected staff and individuals from entering the facility; (5) Failure to adequately clean and disinfect the facility; and (6) Failure to report changes in Mr. Gonzalez' condition to the attending physician and his family.

However, as set forth herein, Plaintiffs' allegations fail to state a claim upon

-2-

which relief can be granted.  While Plaintiffs' case is primarily based on the alleged failure of Redwood Spring to utilize PPE and timely administer a COVID-19 test to Mr. Gonzalez, Redwood Springs has immunity for such claims under the Public Readiness and Emergency Preparedness Act (hereinafter the "PREP Act").

The remaining allegations also fail to state a claim, as the facts pled do not rise to the level required to state a cause of action for Elder Abuse/Neglect or Willful Misconduct under California law.  In support of the Elder Abuse/Neglect, Willful Misconduct and Wrongful Death causes of action, Plaintiffs also allege that Defendant failed to comply with a number of federal and state laws and regulations governing skilled nursing facilities.  However, Plaintiffs fail to plead any facts in support of such allegations and fail to set forth facts establishing how any such alleged violations caused or contributed to Mr. Gonzalez' death.  Plaintiffs allege Mr. Gonzalez died as a result of the COVID-19 virus. Yet, none of the regulations listed are applicable with respect to the COVID-19 pandemic.  As the result of the COVID-19 pandemic and national state of emergency, the CDC and Center for Medicaid and Medicare Services issued numerous directives and guidance.  It is these directives and guidance that are applicable in this case.   Plaintiffs fail to set forth facts establishing that Defendant failed to follow these applicable government directives.

## II.   LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. The Court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. *De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978); *SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-727 (C.D. Cal.1995). For purposes of such a motion, the court assumes as true all well-pleaded facts in a complaint and attached exhibits and views them in a light most favorable to the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). The court need not, however, accept as true legal characterizations, conclusory allegations, unreasonable inferences or unwarranted deductions of fact.

The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2). While this pleading standard does not require detailed factual allegations, it does demand more than an unadorned the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 173 L. Ed.2d 868, 883 (2008). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 127 S. Ct. at 1965). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct., 1955, 1965, 167 L. Ed. 2d 929 (2007).

In interpreting Rule 8, the Supreme Court emphasized in *Iqbal* that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is **plausible** on its face." *Ashcroft v. Iqbal,* 556 U.S. at 678 (quotation omitted, emphasis added). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In this "context-specific" exercise, courts are not bound to accept as true a legal conclusion couched as fact. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 679 (Legal conclusions are "not entitled to the assumption of truth."). In sum, on a 12(b)(6) motion, conclusory statements should be set aside and then, assuming the veracity of any well-pleaded factual allegations, the Court should "determine whether they **plausibly** give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679 (emphasis added).

Dismissal is proper where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989). Similarly, dismissal is proper where an

-4-

affirmative defense or other bar to relief is apparent from the face of the complaint. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Further, where a complaint alleges several distinct claims for relief, it is common practice to apply Rule 12(b)(6) to individual causes of action. *Moran v. Peralta Comty. Coll. Dist.*,825 F. Supp. 891, 894-95 (N.D. Cal. 1993); *Strigliabotti v. Franklin Resources, Inc.*,398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005). The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded, if established, would support a valid claim for relief. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

For purposes of a Rule 12(b)(6) motion, the Court may consider facts susceptible to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). A court may consider matters of judicial notice without converting a Rule 12(b)(6) motion into a Rule 56 Motion for Summary Judgment. *U.S. ex rel. Modglin v. DJO Global Inc*. 48 F.Supp.3d 1362, 1370 (2014 C.D. CA). Under Federal Rule of Evidence Rule 201, the court can take judicial notice of 'public records and government documents available from reliable sources on the internet' such as websites run by government agencies." *Id*. at 1381.

The Complaint is filled with legal conclusions masquerading as facts. Under the legal standard for a Rule 12(b)(6) motion, Plaintiffs have not and cannot allege facts sufficient to support any of the claims alleged in the Complaint.

Defendant also moves to strike any "any redundant, immaterial impertinent or scandalous matter." Federal Rule of Civil Procedure 12(f); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 90, 973-74 (9th Cir. 2010). The court may also strike a prayer for relief that is not available as a matter of law. *Susilo v. Wells Fargo Bank, N.A.*, 796 F.Supp. 2d 1177, 1196 (C.D. CA 2011).

///

///

///

///

### III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE IMMUNITY AFFORDED TO DEFENDANT UNDER THE PREP ACT

The Complaint alleges causes of action for Elder Abuse/Neglect, Willful Misconduct, and Wrongful Death.  These claims, in part, are based upon Defendant's alleged failure to utilize PPE to mitigate the spread of COVID-19 at the facility, and that Defendant delayed in administering a COVID-19 test to Santiago Gonzalez. Plaintiffs' allegations relate to the Defendant's response to the ongoing COVID-19 pandemic and the administration or use of covered countermeasures (i.e., qualified pandemic products which were used to diagnose, mitigate, prevent, treat or cure COVID-19 including COVID-19 testing kits; masks, and other PPE), for which Defendant has immunity under the Public Readiness and Emergency Preparedness Act (the "PREP Act").

Under the PREP Act, 42 U.S.C. §§ 247d-6d and 247d-6e (2006), Congress has provided immunity from claims as well as exclusive federal jurisdiction for certain allegations and relief sought in the Complaint. The legislation empowers the Secretary of Health and Human Services ("HHS") to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law relating to the administration of a "covered countermeasure" during a public health emergency. Specifically, 42 U.S.C. §247d-6d(a)(1) provides as follows: **"Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure."** [Emphasis added.]

On March 10, 2020, United States Health and Human Services Secretary Alex M. Azar issued a Declaration invoking the PREP Act for the COVID-19 pandemic.   The Declaration was effective as of February 4, 2020. See Exhibit A to Defendant's Request for Judicial Notice (hereinafter "RFJN"). Secretary Azar subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020.

See Exhibit B to Defendant's RFJN. The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act.  On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. See Exhibit C to Defendant's RFJN.

The PREP Act is applicable with respect to a "covered countermeasure," which definition includes: "(1) a qualified pandemic or epidemic product (as defined in § 247d-6d (i) (7)) . . .  or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d."  42 USC § 247d-6d (i) (1). A "qualified pandemic or epidemic product" is defined as: a drug, biologic product or device that is:

> "(A)(i) a product manufactured, used, designed, developed, modified, licensed, or procured—
>> (I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or
>> (II) to limit the harm such pandemic or epidemic might otherwise cause;
> (ii) a product, manufacture, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious of life-threatening disease or condition caused by a product described in clause (i); or
> (iii) a product or technology intended to enhance the use or effect of a drug, biologic product, or device described in clause (i) or (ii); and
> (B)(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 262 of this title;
> (ii) the object of research for possible use as described in subparagraph (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act; or
> (iii) authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug and Cosmetic Act." 42 USC § 247d-6d (i)(7)

Robert P. Charrow, General Counsel for the Department of Health and Human Services Office of the Secretary, issued an omnibus advisory opinion to address questions and concerns regarding the scope of the PREP Act immunity for the COVID-19 pandemic.  The Opinion summarized the requirements to meet the definition of a qualified pandemic or epidemic product noting that the product:

> (1) must be used for COVID-19; and
> (2) must be
> > (a) approved, licensed, or cleared by FDA
> > (b) authorized under an EUA [emergency use authorization];
> > (c) described in an EUI [emergency use instructions]; or
> > (d) used under either an Investigational new Drug (IND) application or an Investigational Device Exemption."

See Exhibit D to Defendant's RFJN, pg. 4, and Exhibit A to RFJN.

Moreover, attached as Appendix A to this Advisory Opinion is a list of the "covered countermeasures" for which emergency use authorizations have been issued by the United States Food and Drug Administration.  See Exhibit E to Defendant's RFJN. The list includes twelve pages of COVID-19 test kits, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA. Surgical masks are not listed; however, such masks are Class II medical devices which are cleared by the FDA for use.   (See 21 CFR 878.4040).  Thus, COVID-19 testing kits, face masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

Immunity under the PREP Act is afforded to "covered persons" which include a person or entity that is a "program planner" of a covered countermeasure, and/or a qualified person who prescribed, administered, or dispensed such countermeasure. Under the Act, "person" includes "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. §247d-6d (i)(2) and (5).  The term

"program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing, . . . provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration . . . ."   42 U.S.C. §247d-6d (i)(6).

A private sector employer or other person can be a "program planner" when it carries out prescribed activities.  (See Ex. A-March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52, pg. 15199.)  Robert Charrow, General Counsel for the Office of the Secretary of the Department of Health and Human Services, also recently issued a letter which provides that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure. See Exhibit F to Defendants' RFJN.

Redwood Springs qualifies as a "covered person" under the PREP Act.  At the time of the allegation set forth in the Complaint, Redwood Springs was acting as a "program planner" and "qualified person."  Redwood Springs is a skilled nursing facility licensed by the California Department of Public Health, which employs licensed nursing personnel, including Registered Nurses and Licensed Vocational Nurses, who are authorized to prescribe, administer, or dispense the covered countermeasures set forth in Plaintiffs' Complaint (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the laws of the State of California.  Additionally, Redwood Springs is a program planner that was supervising and administering a program with respect to the administration, dispensing, provision and use of qualified pandemic and epidemic products.

Immunity under the PREP Act "applies to **any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the** . . . distribution . . . **purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure**." [Emphasis added.] 42 USC § 247d-6d (a)(2)(B).

Plaintiffs' claims arise out of Defendant's use, distribution, procurement and administration of covered countermeasures/qualified pandemic products (including COVID-19 testing kits, NIOSH approved respiratory protective devices and other PPE) used to diagnose, mitigate, prevent, treat or cure the COVID-19 virus, or to limit the harm COVID-19 might otherwise thereby triggering application of the PREP Act. Specifically, Plaintiffs' allegations include contentions that Defendant failed to follow and monitor the use of PPE and failed to adequately train staff with respect to safety protocols including the use of PPE.

Defendant further anticipates that Plaintiffs will contend that their claims do not relate to the use of PPE, but instead to an omission in the use PPE, and that such allegations and the allegation regarding the delay in testing Mr. Gonzalez for COVID-19, are not covered by the PREP Act since such claims do not relate to the "administration" or "use" of a covered countermeasures.

In his initial March 10, 2020 Declaration, HHS Secretary Azar notes that the "PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration."   In Section IX of the Declaration, Secretary Azar defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients **_or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients_**; **_management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures_.**" [Emphasis added.]

Plaintiffs' claims involve activities and decisions directly related to the delivery, distribution and dispensing of countermeasures to recipients and the management and operation of Defendant's covered countermeasures program, including decisions as to how best to optimize supplies of PPE and utilize COVID-19 testing kits in light of known regional and national shortages.  The broad definition of "administration of a covered countermeasure" set forth in Secretary Azar's declaration encompasses Defendant's plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate.

Defendant had thus established that it is entitled to immunity under the PREP Act as it relates to Plaintiffs' claims that Defendant failed to utilize PPE, failed to properly train staff in the use of PPE, and delayed in testing Mr. Gonzalez for COVID-19.

## IV.   PLAINTIFFS' REMEDY FOR THEIR CLAIMS RELATING TO PPE AND COVID-19 TESTING IS TO FILE A CLAIM UNDER 42 U.S.C. §247d-6e

The sole exception to the PREP Act immunity from suit and liability (other than actions by and against the United States), is "for an exclusive Federal cause of action against a covered person for death or serious injury proximately caused by willful misconduct" which must be filed in the United States District Court for the District of Columbia.  42 U.S.C. §§247d-6d(d)(1) and (e)(1).

"Willful misconduct" under the PREP Act, is defined as "**an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; <u>and</u> (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.**" [Emphasis added.] 42 U.S.C. §247d-6d(c)(1)(A).  Plaintiffs have the burden of proving by clear and convincing evidence, "willful misconduct" by each covered person sued and that such "willful misconduct" caused death or serious injury.  42 U.S.C. §247d-6d (c)(3).

For claims barred pursuant to the immunity under 42 U.S.C. §247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under §247d-6e, which permits an individual to make a claim for a "covered injury directly caused by the administration or use of a covered countermeasure."  Even a claimant alleging "willful misconduct" must first apply for benefits under §247d-6e before filing an action under §247d-6d (d) relating to the "willful misconduct" thus further illustrating Congress' intent for the Act to cover all claims related to a "covered countermeasure."

Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity, and has created an exclusive federal remedy for such preempted claims.

## V.   PLAINTIFFS' ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW

The Elder Abuse and Dependent Adult Civil Protection Act, (hereinafter "the Elder Abuse Act"), is a remedial scheme under which heightened remedies may be sought where it is established that a defendant has engaged in specific types of tortious conduct: i.e., abuse or neglect of an elder or dependent adult. California Welfare and Institutions Code §15600, et seq.  This requires that the patient or resident was subjected to physical abuse, neglect or deprivation by a care custodian of goods and services that are necessary to avoid physical harm or mental suffering. California Welfare and Institutions Code §15610.07)

Neglect under California Welfare & Institutions Code § 15610.57 is defined as "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."  Under the Elder Abuse Act, neglect includes the failure to provide medical care for physical and mental health needs and the failure to protect from health and safety hazards.  The California Supreme Court in *Covenant Care, Inc. v. Superior Court*, 32 Cal.4th 771 (2004), has explained that "neglect" as used in the Elder Abuse Act, is reserved for the "especially egregious abuse" proven to a "high standard," as

-12-

opposed to ordinary acts of medical negligence.  The California Supreme Court has held that even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act. *Id*. at 785. The California Supreme Court has emphasized that the Elder Abuse Act was intended to cover an area distinct and completely separate from medical negligence.  *Id*. at 790,

> "...'neglect' as defined in former Section 15610.57 and used in Section 15657 does not refer to the performance of medical services in a manner inferior to 'the knowledge skill, and care ordinarily possessed or employed by members of the profession in good standing' (citations omitted), but rather to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to         carry out their custodial obligations." *Ibid*.

California Welfare and Institutions Code Section 15657 further provides enhanced remedies for elder abuse/neglect, but with very strict requirements:

> "Where it is proven by ***clear and convincing evidence*** that a defendant is liable for physical abuse [or] neglect . . . ***and*** that the defendant has been guilty of ***recklessness, oppression, fraud or malice*** in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:
>
> (a) The court shall award to the plaintiff reasonable attorney's fees and costs . . .
> (b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.]  However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.
> (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer." [Emphasis added.]

Thus, in order to obtain the enhanced remedies available under the Elder Abuse Act, Plaintiffs are required to plead ***specific*** allegations constituting (1) ***physical abuse or neglect***, of an elderly adult ***and*** (2) that such abuse or neglect was done with ***malice, oppression, fraud, or recklessness***.  In other words, Plaintiffs must plead conduct that

-13-

1    amounts to at least recklessness.  Claims for elder abuse, with the heightened remedies
2    recoverable, require conduct above and beyond that found in a medical negligence case.
3    Specifically, elder abuse requires clear and convincing evidence of recklessness,
4    oppression, fraud, or malice.  See *Delaney v. Baker*, 20 Cal.4th 23 (1999); *Mack v.*
5    *Soung,* 80 Cal.App.4th 966 (2000).)

6    Unlike a negligence cause of action where notice pleading is sufficient, when
7    pleading a claim for elder abuse, factual allegations cannot be made in conclusory terms.
8    *Covenant Care, Inc. v. Superior Court,* 32 Cal.4th 771, 790 (2004).  The California
9    Supreme Court made it clear that "statutory causes of action must be pleaded with
10   particularity."  *Id*. at 790.  In other words, a plaintiff must plead facts sufficient to
11   establish every element of the cause of action pled, as allegations are nothing more than
12   theories and do not establish any element of any cause of action.  *Carter v. Prime*
13   *Healthcare Paradise Valley, LLC*., 198 Cal.App.4th 396, 407 (2011).  Conclusory
14   language which mirrors the required statutory language is insufficient.  *Covenant Care,*
15   *Inc. v. Superior Court*, 32 Cal.4th at 790.

16   In *Delaney v. Baker*, 20 Cal.4th 23 (1999), the California Supreme Court
17   reviewed the legislative history behind the Elder Abuse Act and concluded that the
18   purpose and intent of the Act was to protect a uniquely vulnerable and exploitable
19   population from gross mistreatment in the form of abuse and custodial neglect.  The
20   California Supreme Court stated that the enactment of the Elder Abuse Act was not to
21   provide additional remedies to elders or dependent adults who find themselves the
22   victims of medical malpractice and wish to overcome the MICRA limitations. *Id.* at 34.
23   In particular, a cause of action for elder abuse, requires a plaintiff to plead facts
24   sufficient to establish that the **defendant recklessly or maliciously engaged in**
25   **"egregious conduct" amounting to a "failure to provide medical care," as opposed**
26   **to mere medical negligence.**  *Id*. at 34-35 [Emphasis added].

27   "Recklessness, unlike negligence, involves more than 'inadvertence,
28   incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level

-14-

of a 'conscious choice of a course of action ... with knowledge of the serious danger to others involved in it.'" [Citation omitted] *Id.* at 31-32.  Moreover, "neglect" as used in the Elder Abuse Act, "covers an area of misconduct distinct from 'professional negligence.'  As used in the Act, neglect refers not to the substandard performance of medical services but rather, to the '**failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations**.' [Citations omitted.] Thus, the statutory definition of 'neglect' speaks not of the undertaking of medical services, but of the failure to provide medical care."  [Emphasis added.].  *Covenant Care* at 783.  "**Even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act**." *Covenant Care*, at 785. [Emphasis added.]

Here, Plaintiffs allege that Defendant failed to utilize PPE to mitigate the spread of COVID-19 at the facility, failed to timely administer a COVID-19 test to Mr. Gonzalez, failed  to isolate COVID-19 positive residents to prevent spread of the virus at the facility, failed to monitor staff for infection and prevent infected staff and individuals from entering the facility, failed to adequately clean and disinfect the facility, and  failed to report changes in Mr. Gonzalez condition to the attending physician and his family.

First, as noted above, Defendants have complete immunity with respect to the claims relating to PPE and COVID-19 testing.  Moreover, as to these and all of Plaintiffs' claims, Plaintiffs fail to allege any facts establishing recklessness, oppression, fraud or malice on the part of Defendant.  Plaintiffs have failed to allege any conduct that "rises to the level of a conscious choice of a course of action ... with knowledge of the serious danger to others involved in it."  Assuming Plaintiffs' claims to be true, even if Defendant did fail to utilize any PPE, delayed in testing Mr. Gonzalez or failed to ensure the facility was staffed with personnel who were not COVID-19 positive, these alleged deficiencies occurred during a pandemic with known state and nationwide staffing shortages and a scarcity of PPE and COVID-19 testing kits. Any alleged

inability to provide sufficient staffing or other resources during the COVID-19 pandemic was not a "conscious choice" of action on the part of the facility, but was instead due to circumstances beyond Redwood Springs control which arose as a result of the pandemic.

In support of their claim for Elder Abuse/Neglect, Plaintiffs also allege that Defendant failed to comply with a number of federal and state laws and regulations governing skilled nursing facilities.   However, Plaintiffs fail to plead any facts in support of such allegations and fail to set forth that any of these alleged violations caused or contributed to Mr. Gonzalez' death.  Plaintiffs allege Mr. Gonzalez died as a result of the COVID-19 virus. Yet, none of the regulations listed are applicable with respect to the COVID-19 pandemic.

In response to the COVID-19 pandemic and national state of emergency, the CDC and Center for Medicaid and Medicare Services("CMS") issued numerous directives and guidance. It is these directives and guidance that are applicable in this case.   In a March 13, 2020 guidance memo, CMS acknowledged the scarcity of supplies in certain areas of the country.  State and Federal surveyors were told to not cite a facility for a lack of supplies (e.g., PPE such as gowns, N95 respirators, surgical masks and hand sanitizer), if the facility was having difficulty obtaining these supplies for reasons outside of their control. CMS did expect facilities to take actions to mitigate any resource shortages and show they were taking all appropriate steps to obtain necessary supplies as soon as possible. Facilities were advised to contact the local and state public health agency of any shortage of PPE (due to regional or national supplier shortages), and to follow national guidelines for optimizing their current supply, or identify the next best option to care for residents.  (See March 13, 2020 CMS Memorandum QSO-20-14-NH attached as Exhibit G to Defendant's RFJD.)

On March 17, 2020, the CDC published strategies for the optimizing the supply of eye protection, isolation gowns, N95 respirators and face masks.   The documents provided a series of specific directives relating to the use PPE based on whether the

-16-

facility was in conventional capacity (normal operation), contingency capacity (experiencing temporary expected PPE shortages), or crisis capacity (involving periods of known PPE shortages necessitating strategies that are no commensurate with standard U.S. standards of care).

For facilities in contingency capacity, the CDC advised that extended use of facemasks should be implemented and that the use of facemasks should be restricted for use by healthcare providers rather than patients for source control.  During crisis capacity, facilities were advised to prioritize facemask use for use during activities where prolonged face-to face or close contact with a potentially infectious patient is unavoidable, exclude healthcare providers at higher risk for severe illness from COVID-19 from contact with known or suspected COVID-19 patients, use a face shield with no mask, and in settings where facemasks were not available, use homemade masks. In the document pertaining to optimizing the use of N95 respirators, the CDC advised that (1) if the healthcare provider was to remain 6 feet away from a symptomatic patient, no facemask or N95 respirator was required; (2)  if the healthcare provider was to be within 3 to 6 feet of a symptomatic patient, a facemask should be used; and (3) if the healthcare provider was to be within 3 feet of a symptomatic patient including providing direct patient care, an N95 respiratory should be used if available.  When an N95 respirator was not available, healthcare providers were advised to wear a surgical mask and exclude healthcare providers at higher risk from severe illness from contact with an infectious patient.  (See CDC guidance documents containing strategies for optimizing the supply of eye protection, isolation gowns, N95 respirators and face masks, attached collectively as Exhibit "H" to Defendant's RFJN.)

Directives and guidance were also issued with respect to isolation.  In its publication to long term care facilities on March 21, 2020, the CDC advised that a resident with a confirmed case or suspected case of COVID-19 did not need to be placed in an airborne infection isolation room ("AIIR"), but should ideally be placed in a private room with their own bathroom.  The CDC indicated that room sharing might be

-17-

necessary if there are multiple residents with known or suspected COVID in the facility. As roommates of symptomatic residents might already be exposed, it was generally not recommended that they be separated in this scenario.   (See March 21, 2020 CDC publication "Preparing for COVID-19: Long-Term Care Facilities Nursing Homes", attached as Exhibit "I" to Defendant's RFJN.)

It is these guidelines that are relevant to the care at issue. Plaintiffs however fail to set forth facts stating that Defendant failed to follow these applicable government directives. In light of these federal directives, Plaintiffs allegations (made with no factual support) regarding PPE, COVID-19 testing and failures to isolate do not even rise to the level of negligence, and certainly in no way approach reckless neglect.

Plaintiffs allegations further infer that the spread of COVID-19 in the facility must have been due to failures by Defendant in the practice and implementation of infection control protocols.  Such conclusion ignores the incubation period for the virus, and the current knowledge and consensus regarding asymptomatic spread. See Exhibit J to Defendant's RFJN- July 31, 2020 CDC Public Health Guidance for Community-Related Exposure.

Finally, Plaintiffs' allegations against Defendant relate to its role as the employer of the administration staff responsible for operation of Redwood Springs, and the staff providing care to Mr. Gonzalez. Thus, to be entitled to recover any damages or attorney's fees under the Elder Abuse Act, Plaintiffs must allege facts establishing that (1) the Defendant employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized; or (2) ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. . ." See California Welfare and Institutions Code §15657. Moreover, "[w]ith respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing

agent of the corporation." See California Welfare and Institutions Code §15657(c) and California Civil Code § 3294(b).

Here, Plaintiffs have failed to plead facts, as opposed to conclusions, relating to ratification or advanced knowledge of the unfitness of an employee as required to recover any damages under the Elder Abuse Act.

For the foregoing reasons, Plaintiffs' cause of action for elder abuse/neglect should be dismissed without leave to amend.

## VI.    PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR WILLFUL MISCONDUCT

California does not recognize "willful misconduct" as a separate tort, but instead it is an "aggravated form of negligence" which differs in quality rather than degree from ordinary lack of care. *Berkley v. Dowds,* 152 Cal.App. 4th 518, 526 (2007).  See also *Simmons v. Southern Pacific Transportation Co.,* 62 Cal.App.3d 341 (1976).  An act or omission must also be more specifically described in order to rise to the level of willful misconduct. "No claim for willful misconduct can be stated without alleging the specific act or omission that caused the injury.  In addition, '"'[t]hree essential elements must be present to raise a negligent act to the level of willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is probable, as opposed to a possible, result of the danger; and (3) conscious failure to act to avoid the peril.'"'"  [Citations omitted.]  *Berkely v. Dowds*, *supra* at pg. 528 citing *Simmons v. Southern Pacific Transportation Co.*, *supra*, 62 Cal. App. 3d at p. 360.

Plaintiffs' general and conclusory allegations fail to meet this standard.  Plaintiffs fail to allege facts, as opposed to conclusions, in support of their allegations regarding deficiencies in the care of Mr. Gonalzalez, use of  PPE, COVID-19 testing, and the isolation of COVID-19 positive residents.  These allegations lack the specificity necessary to state a claim for willful misconduct.  Thus, this cause of action fails to state a claim upon which relief may be granted and should be dismissed without leave to

-19-

amend.

## VII.     PLAINTIFFS' CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The elements of wrongful death under California law are "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Nogart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999).  In support of their claim for wrongful death, Plaintiffs allege that Redwood Springs failed to supervise, assist, care for, assess, diagnose and treat the injuries suffered by Santiago Gonzalez. However, Plaintiffs fail set forth how any of these vaguely alleged omissions caused or contributed to Mr. Gonzalez' death from COVID-19. Moreover, as the result of the COVID-19 pandemic and national state of emergency, the CDC and Center for Medicaid and Medicare Services issued numerous directives and guidance. It is these directives and guidance that are applicable in this case.  Plaintiffs fail to set forth facts stating that Defendant failed to follow these applicable government directives.

Plaintiffs' contentions and entire Complaint ignores the fact that COVID-19 is an airborne virus that can be and is transmitted by asymptomatic individuals. See Defendant's RFJN Exhibit J and Exhibit K- CDC "How COVID-19 Spreads."

For the foregoing reasons, Plaintiffs' wrongful death cause of action fails and should be dismissed without leave to amend.

## VIII.     PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS FOR PRE-DEATH PAIN AND SUFFERING, ATTORNEY'S FEES AND PUNITIVE DAMAGES

California Welfare and Institutions Code § 15657 provides enhanced remedies under the Elder Abuse Act, in certain situations, but with very strict requirements:

> "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse [or] neglect . . . and that the defendant has been guilty of recklessness, oppression, fraud or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:

-20-

 (a) The court shall award to the plaintiff reasonable attorney's fees and costs . . .
(b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.]  However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.
(c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

Moreover, with respect to punitive damages, California Civil Code § 3294(a) provides, in pertinent part, as follows:

"(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, *unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation*." [Emphasis added.]

Here, while Plaintiffs' Complaint contains prayers for punitive damages, pre-death pain and suffering, and attorney's fees and costs, Plaintiffs have failed to plead any facts relating to ratification or advanced knowledge of the unfitness of an employee as required to recover such damages.  Moreover, as set forth above, Plaintiffs have also failed to set forth facts establishing recklessness, oppression, fraud or malice in the commission of elder abuse to support the recovery of pre-death pain and suffering or attorney's fees under the elder abuse claim.  The Complaint also fails to allege any act or

omission rising to the level of oppression, fraud or malice to support the recovery of punitive damages.

Furthermore, Plaintiffs seek to recover attorney's fees and pre-death pain and suffering pursuant to the cause of action for Willful Misconduct. However, California Code of Civil Procedure § 1021, provides that attorney's fees are not recoverable unless specifically provided for by statute or an agreement between the parties. Moreover, California Civil Code § 377.34, provides, in pertinent part, as follows:

> "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . **and do not include damages for pain, suffering, or disfigurement**." [Emphasis added.]

Thus, absent a statute to the contrary, such as the Elder Abuse Act, pre-death pain and suffering of a decedent, and attorney's fees are not recoverable. There is no such statute applicable to claims for Willful Misconduct, other than such conduct which is also alleged in the Elder Abuse cause of action. To that end, this cause of action is also duplicative and should be stricken.

For the foregoing reasons, Plaintiffs' claims for pre-death and suffering, attorney's fees and punitive damages should be stricken from the Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(f).

## IX. CONCLUSION

For all of the foregoing reasons, Defendant, Spruce Holdings, LLC dba Redwood Springs Healthcare Center should be dismissed from Plaintiffs' Complaint, without leave to amend, and Plaintiffs should be barred from bringing any further actions against Defendant, in any venue or jurisdiction, whether in Federal or State court, for the actions and injuries alleged in the subject Complaint. Defendant further respectfully requests

///

///

///

the Court issue an order striking out the immaterial, impertinent and scandalous allegations in Plaintiffs' Complaint as set forth in the Notice to this Motion and Points and Authorities in support thereof.

Dated:  September 25. 2020                    WILSON GETTY LLP


By:   /s/ Kim S. Cruz
      _____
      William C. Wilson
      Kim S. Cruz

Attorneys for Defendant SPRUCE HOLDINGS,
LLC dba REDWOOD SPRINGS
HEALTHCARE CENTER

**MEMORANDUM OF POINTS AND AUTHORITIES**
**Case No. 1:20-cv-01260-NONE-EPG**

*Jamie Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et. al. v. Redwood Springs Healthcare Center, et. al.*
**United States District Court, Eastern District of California**
**Case No.**
\*\*\*
**PROOF OF SERVICE**

  I am employed in San Diego County.  I am over the age of 18 and not a party to this action.  My business address is 12555 High Bluff Drive, Suite 270, San Diego, California 92130.

  On **September 25, 2020**, I served the foregoing documents, described in this action as:

**DEFENDANT, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f)) PORTIONS OF PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

As follows:

Warren R. Paboojian, Esq.
Jason S. Bell, Esq.
Baradat & Paboojian, Inc.
720 West Alluvial Avenue
Fresno, CA 93711
T: 559.431.5366
F: 559.431.1702
Email: wrp@bplaw-inc.com
Email: jsb@bplaw-inc.com

**[X]** **By CM/ECF ELECTRONIC DELIVERY:** In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

**[X]** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **September 25, 2020** at San Diego, California.

*Tonya Jamois*
Tonya Jamois

---