# WILSON GETTY LLP

*A Limited Liability Partnership Including Professional Corporations*

WILLIAM C. WILSON
*A Professional Corporation*
bwilson@wilsongetty.com

ATTORNEYS AT LAW
12555 High Bluff Drive, Suite 270
San Diego, California  92130
Tel:  858.847.3237 Ext. 13
Fax:  858.847.3365

August 31, 2020

*Via U.S. Mail*

Warren R. Paboojian, Esq.
Jason S. Bell, Esq.
Baradat & Paboojian, Inc.
720 West Alluvial Avenue
Fresno, CA 93711

> **Re:** ***Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center***
> Superior Court of California, County of Tulare
> Case No. VCU283547
> Our File No. 317-

Dear Counsel:

Please accept the following as Defendant, Spruce Holdings, LLC dba Redwood Springs Healthcare Center's (erroneously sued and served separately as Redwood Springs Healthcare Center and Spruce Holdings, LLC), meet and confer with respect to Defendant's response to Plaintiff's Complaint. Defendant intends to remove this case to Federal Court and file a Motion to Dismiss and Motion to Strike Portions of Plaintiffs' Complaint.  Please allow this correspondence to address the basis for our motions in detail.

## I.     PLAINTIFFS' ALLEGATIONS

Plaintiffs, Jaime Gonzalez, individually and as Successor in Interest to the Estate of Santiago Gonzalez, deceased; Jorge Gonzalez; Americo Gonzalez; Marisuisi Rodriguez; Ramona Rodriguez; Roberto Gonzalez; Tarcila Reveles; and Santiago Gonzalez, allege causes of action for (1) Elder Abuse; (2) Willful Misconduct; and (3) Wrongful Death.

Based on information and belief, Plaintiffs' allege that prior to April 3, 2020, Defendants and each of them knew, or should have known and/or were put on notice, that there were multiple warnings, health dangers, procedures and protocols issued by the local, state and federal governments, regarding the prevention measures for spreading and contracting COVID-19, regarding the general public and their elderly residents. It is further believed that Defendants knew, or should have known, that the elderly and healthcare facilities caring for the elderly were especially vulnerable to contracting and spreading COVID-19. Further, Defendants knew, or should have known,

Warren R. Paboojian, Esq.　　　　　　　　　WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 2

that the elderly population was vulnerable to becoming deathly ill if infected with COVID-19. Despite this knowledge and the safety procedures and protocols being issued, Defendants and each of them, either did not implement those safety procedures and/or whatever safety procedures they did implement, if any, Defendants negligently failed to follow/monitor them and/or disregarded them. These failed safety measures included, but are not limited to:

(1) Failure of REDWOOD SPRINGS to provide staff and others at the facility Personal Protective Equipment;

(2) Failure of REDWOOD SPRINGS to require the staff and others while at the facility to use and/or monitor the use of Personal Protective Equipment;

(3) Failure to adequately staff REDWOOD SPRINGS with personnel uninfected with COVID-19;

(4) Failure to provide Redwood Springs staff and others with adequate training;

(5) Failure of REDWOOD SPRINGS to monitor the health of persons and staff entering the facility for COVID-19 related symptoms and infection;

(6) Failure to provide adequate cleaning supplies and failure to adequately clean and sanitize the facility;

(7) Failure to provide adequate care and/or monitoring of elderly patients that were positive for COVID-19;

(8) Failure to properly and adequately isolate infected and suspected infected residents from non-infected residents and prevent cross-contamination of the healthy elderly residents;

(9) Failure to timely test Santiago Gonzalez and other residents and staff for COVID- 19 in order to timely isolate and separate the infected individuals from non- infected individuals; and

(10) Failure to adequately inform the family of Santiago Gonzalez of the COVID-19 infection that had permeated the facility and the true health condition of Santiago Gonzalez.

(Complaint, ¶ 16.)

Warren R. Paboojian, Esq.                               WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 3

  Plaintiffs' also allege that once REDWOOD SPRINGS became aware that employees and residents were infected with COVID-19, it failed to immediately notify other employees and family members of the residents of the outbreak. Plaintiffs' allege, based upon information and belief, that the facility continued to require and encourage employees to enter the facility and continue to work, despite reporting they were symptomatic or COVID-19 positive. The Complaint alleges that REDWOOD SPRINGS required employees with infections and/or infection-related symptoms to attend work, because "they did not want to spend the money to hire additional staff," while staff were out due to COVID-19. (Complaint, ¶ 11.)

  In the Complaint, Plaintiffs assert that on multiple occasions, REDWOOD SPRINGS assured the family of Santiago Gonzalez that he was safe and that safety precautions were being taken to protect him from COVID-19. "However, this was not true." (Complaint, ¶ 12.)

  On or about April 3, 2020, Santiago Gonzalez tested positive for COVID-19. Plaintiffs' contend that Santiago Gonzalez and other patients at the facility contracted COVID-19 due to Defendants' failure to properly and adequately care for and protect the elderly patients in their care. (Complaint, ¶ 13.)

  Plaintiffs' allege that in the seven (7) days following the confirmation of the positive COVID test, REDWOOD SPRINGS told Santiago Gonzalez' family that he was doing "fine" and had "no temperature". (Complaint, ¶ 13.) On April 10, 2020, the family was again advised that Mr. Gonzalez was doing "fine." Later that day, on April 10, 2020, to the family's surprise, they were notified that Mr. Gonzalez had passed away. Plaintiffs' contend that Mr. Gonzalez' death was the result of Defendants' failure to act, care for, protect and assist him. (Complaint, ¶ 14.)

  It is further alleged that Defendants made financial decisions at the expense of the safety of their residents and employees. Such decisions included the limiting of spending on cleaning/disinfectant supplies and personal protective equipment, including face masks, gloves and gowns. Plaintiffs also allege that Defendants "decided not to incur the expense" of employing healthy non- infected staff and instead encouraged and required infected and/or suspected infected staff to continue to work at REDWOOD SPRINGS. (Complaint, ¶ 50)

  Plaintiffs further claim that REDWOOD SPRINGS failed to provide supervision, care and assistance by sufficient numbers of personnel; failed to provide services and activities and to operate, own, manage, supervise, monitor, control and/or administer the facility in a manner that enabled residents to attain or maintain the highest practicable physical, mental, and psychosocial safety and well-being; failed to provide supervision and assistance; failed to sufficiently budget for personal protective equipment and sufficient healthy staffing to meet the needs of and protection of their residents; failed to

Warren R. Paboojian, Esq.                                   WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 4

supervise, protect and assist Mr. Gonzalez in a manner and in an environment that promoted maintenance or enhancement or protection of his quality of life; failed to conduct an ongoing, accurate, and comprehensive assessment of Mr. Gonzalez' needs; and failed to supervise and provide assistance and to timely notify a physician and Santiago Gonzalez's family and legal representative of material changes in his condition and needs.. (Complaint, ¶s 18-23.)

The Complaint also alleges that REDWOOD SPRINGS was under a statutory duty to comply with all applicable federal and state laws and regulations governing nursing homes in California, which were a contributing factor to the death of Santiago Gonzalez. These laws and regulations include, but are not limited to: 42 CFR sections 483.10 (a) & (e), 483.21, 483.25 and 483.30; California Health & Safety Code sections 1279.6, 1337.1 and 1599.1 (a); Title 22 of the California Code of Regulation sections 72311, 72315, 72329 (a), 72501 (e), 72517, 72523, 72527 (a)(ll), 72537, 72539, and 72541;  and 42 USC section 1396r (b)(2). (Complaint, ¶ 51)

## II. PLAINTIFFS' CLAIMS RELATING TO COVERED COUNTERMEASURES  ARE BARRED BY THE PREP ACT

Plaintiffs' Complaint includes allegations that Defendants failed to provide PPE to staff and others at the facility; failed to require staff and others to use PPE; failed to monitor the use of PPE at the facility; and failed to timely test Santiago Gonzalez and other residents for COVID-19. These allegations relate to Defendant's administration and/or use of covered countermeasures and qualified pandemic products including facemasks, gloves, gowns, N95 masks, and COVID-19 testing kits, used to diagnose, mitigate, prevent, treat or cure COVID-19 or to limit the harm COVID-19 might otherwise cause.  These claims related to "covered countermeasures" fall under the Public Readiness and Emergency Preparedness Act ("PREP"), 42 U.S.C. §§ 247d-6d and 247d-6e (2006), which provides Defendant with immunity for such claims.

The PREP Act, along with the Declarations of United States Health and Human Services Secretary Alex M. Azar, are federal statutes that apply to healthcare providers and skilled nursing facilities, such as Defendant, with respect to the administration of countermeasures to diagnose, mitigate, prevent, treat, or cure COVID-19 or limit the harm the COVID-19 pandemic might otherwise cause.  Under the PREP Act, Congress has provided immunity as well as an exclusive remedy for the substance of the allegations and relief sought in the Complaint thereby preempting State law with respect to the claims raised in the Complaint.

The PREP Act provides liability protections for "covered countermeasures" including  "qualified pandemic or epidemic products" (i.e, a drug, biologic product, or device manufactured, used, designed, developed, licensed or procured to diagnose, mitigate, prevent, treat or cure a pandemic or epidemic or to limit the harm such

Warren R. Paboojian, Esq.                      **WILSON GETTY LLP**
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 5

pandemic or epidemic might otherwise cause); and "respiratory protective devices" approved by the National Institute of Occupational Safety and Health (facemasks) which the Secretary determines to be priority for use during a health emergency. 42 U.S.C. § 247d-6d(i)(1).

The legislation empowers the Secretary of Health and Human Services to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law relating to the administration of a "covered countermeasure" during a health emergency.  42 U.S.C. §247d-6d(a)(1) and (b).

Here, the PREP Act has been invoked with respect to the COVID-19 pandemic. United States Health and Human Services Secretary Alex M. Azar issued a Declaration, effective as of February 4, 2020, to provide liability immunity for activities related to medical countermeasures against COVID-19.  (See March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52.) Secretary Azar issued an Amendment to this Declaration to specifically include "respiratory protective devices proved by NIOSH" to aid the nation's care community's response to the COVID-19 outbreak.  This Amendment was effective as of March 27, 2020.  (See April 10, 2020 Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 73.) On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. (See June 4, 2020, Second Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 110; and 42 U.S.C. § 247d-6d(i)(7)(A)(i)(II).)

The PREP Act provides for immunity as follows: "Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure."  See 42 U.S.C. §247d-6d(a)(1). PREP Act immunity applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the purchase, . . . dispensing, prescribing, administration, licensing or use of such countermeasure."  42 U.S.C. §247d-6d(a)(2)(B).

The Act is applicable with respect to "covered countermeasures," which are defined to include: "(1) a qualified pandemic or epidemic product (as defined in § 247d-6d

Warren R. Paboojian, Esq.　　　　　　　　　　**WILSON GETTY LLP**
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 6

(i) (7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d." 42 USC § 247d-6d (i) (1).

　　　In his initial March 10, 2020 Declaration, HHS Secretary Azar notes that the "PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration." In Section IX of the Declaration, Secretary Azar defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients ***or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients***; ***management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures***." [Emphasis added.] This broad definition of "administration of a covered countermeasure" encompasses plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate.

　　　Immunity under the PREP Act is afforded to "covered persons" which include a person or entity that is a program planner of a covered countermeasure, and/or a qualified person who prescribed, administered, or dispensed such countermeasure. Under the Act, "person" includes "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. §247d-6d (i)(2) and (5).

　　　The term "program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing, . . . provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration . . . ." 42 U.S.C. §247d-6d (i)(6). A private sector employer or other person can be a "program planner" when it carries out prescribed activities. (See March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52, pg. 15199.) Robert Charrow, General Counsel for the Office of the Secretary of the Department of Health and Human Services, also recently issued a letter which provides that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure. (See August 14, 2020, Letter by Robert Charrow to Thomas Barker of Foley Hoag, LLP.)

Warren R. Paboojian, Esq.                    WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 7

Defendant qualifies as "covered person" under the PREP Act. At the time of the allegation set forth in the Complaint, Defendant, Spruce Holdings, LLC dba Redwood Springs Healthcare Center ("Redwood Springs") was acting as a "program planner" and "qualified person." Redwood Springs is a skilled nursing facility licensed by the California Department of Public Health. Redwood Springs employs licensed nursing personnel, including Registered Nurses and Licensed Vocational Nurses, who are authorized to prescribe, administer, or dispense the covered countermeasures set forth in Plaintiffs' Complaint (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the laws of the State of California. Additionally, Redwood Springs is a program planner that was supervising and administering a program with respect to the administration, dispensing, provision and use of qualified pandemic and epidemic products.

Thus, the PREP Act affords Defendant immunity with respect to Plaintiffs' claims regarding PPE and COVID-19 testing, and other covered countermeasures.

### III. PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE PREP ACT AND ARE SUBJECT TO FEDERAL COURT JURISDICTION

The PREP Act provides: "During the effective period of a declaration . . . or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that – (A) is different from, or is in conflict with, any requirement applicable under this section; and (B) relates to . . . use, any aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section . . ." 42 U.S.C. §247d-6d (b)(8).

The sole exception to this immunity from suit and liability (other than actions by and against the United States), "shall be for an exclusive Federal cause of action against a covered person for death or serious injury proximately caused by willful misconduct" which must be filed in the United States District Court for the District of Columbia. 42 U.S.C. §§247d-6d(d)(1) and (e)(1).

"Willful misconduct" under the PREP Act, is defined as "**an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.**" [Emphasis added.] 42 U.S.C. §247d-6d(c)(1)(A). Plaintiffs have the burden of proving by clear and convincing evidence, "willful misconduct" by each covered person sued and that such "willful misconduct" caused death or serious injury. 42 U.S.C. §247d-6d (c)(3).

Warren R. Paboojian, Esq.  WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 8

For claims barred pursuant to the immunity under 42 U.S.C. §247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under §247d-6e, which permits an individual to make a claim for a "covered injury directly caused by the administration or use of a covered countermeasure." Even a claimant alleging "willful misconduct" must first apply for benefits under §247d-6e before filing an action under §247d-6d (d) relating to the "willful misconduct" thus further illustrating Congress' intent for the Act to cover all claims related to a "covered countermeasure."

Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity, and has created an exclusive federal remedy for such preempted claims. Plaintiffs' claims for loss were caused by, arise out of, relate to, or resulted from Defendant's administration of covered countermeasures/qualified pandemic products used to diagnose, mitigate, prevent, treat or cure COVID-19, or to limit the harm COVID-19 might otherwise cause including NIOSH approved respiratory protective devices and COVID-19 testing kits. Thus, the claims in Plaintiffs' Complaint as it relates to these "covered countermeasures" are preempted under the PREP Act, which provides for exclusive federal jurisdiction for such claims.

## IV.   PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION UNDER THE ELDER ABUSE/NEGLECT STATUTE

As set forth above, Defendant has immunity under the PREP Act with respect to Plaintiffs' claims involving PPE, COVID-19 testing and other covered countermeasures.

In addition, in support of their claim for Elder Abuse/Neglect, Plaintiffs allege that Defendant failed to comply with a number of federal and state laws and regulations governing skilled nursing facilities. However, Plaintiffs fail to plead any facts in support of such allegations and fail to set forth that any of these alleged violations caused or contributed to Mr. Gonzalez' death. Plaintiffs allege Mr. Gonzalez died as a result of the COVID-19 virus. Yet, none of the regulations listed are applicable with respect to the COVID-19 pandemic. As the result of the COVID-19 pandemic and national state of emergency, the CDC and Center for Medicaid and Medicare Services issued numerous directives and guidance. It is these directives and guidance that are applicable in this case. Plaintiffs fail to set forth facts stating that Defendant failed to follow these applicable government directives.

Moreover, unlike a negligence cause of action where notice pleading is sufficient, when pleading a claim for Elder Abuse/Neglect, **factual allegations cannot be made in conclusory terms**. Case law has established that claims for Elder Abuse/Neglect, with the heightened remedies recoverable, require conduct above and beyond that found in a medical negligence case. Specifically, Elder abuse/Neglect requires **clear and convincing evidence of recklessness, oppression, fraud, or malice.** See *Delaney v. Baker* (1999) 20 Cal.4th 23. Here, Plaintiffs' claim for Elder Abuse/Neglect against

Warren R. Paboojian, Esq.　　　　　　　　　　WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 9

Defendants is not pled with sufficient particularity. Plaintiffs fail to allege facts, as opposed to conclusions, as it relates to the cause of action for Elder Abuse/Neglect.

Moreover, the allegations in the Complaint fail to set forth any act or omission by Defendant which rises to the level of recklessness, malice, oppression or fraud. "Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' [Citation omitted.]" Delany v. Baker (1999) 20 Cal.4th 23, 31-32. In addition to their claims regarding a lack of PPE and COVID-19 testing, Plaintiffs allege deficiencies with respect to staffing and training of staff, failures to isolate infected individuals, and failures to monitor the health of persons and staff entering the facility. Defendant denies Plaintiffs' claims. However, even presuming Plaintiffs' claims to be true, Plaintiffs fail to set forth facts showing that there was any "conscious choice" with respect to such matters during this global pandemic.

**V.　PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR WILLFUL MISCONDUCT**

California does not recognize "willful misconduct" as a separate tort, but instead it is an "aggravated form of negligence" which differs in quality rather than degree from ordinary lack of care. Berkley v. Dowds (2007) 152 Cal.App. 4th 518, 526. See also Simmons v. Southern Pacific Transportation Co. (1976) 62 Cal.App.3d 341. An act or omission must also be more specifically described in order to rise to the level of willful misconduct. "No claim for willful misconduct can be stated without alleging the specific act or omission that caused the injury. In addition, '"[t]hree essential elements must be present to raise a negligent act to the level of willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is probable, as opposed to a possible, result of the danger; and (3) conscious failure to act to avoid the peril.'"" [Citations omitted.] Berkely v. Dowds, supra at pg. 528 citing Simmons v. Southern Pacific Transportation Co., supra, 62 Cal. App. 3d at p. 360. Plaintiffs' allegations fail to meet this standard.

**VI.　PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR WRONGFUL DEATH**

In support of their cause of action for Wrongful Death, Plaintiffs, allege that Redwood Springs failed to supervise, assist, care for, assess, diagnose and treat the "injuries" suffered by Santiago Gonzalez.." However, Plaintiffs fail set forth how any of these alleged omissions caused or contributed to Mr. Gonzalez' death from COVID-19.

Warren R. Paboojian, Esq.             WILSON GETTY LLP
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 10

## VII. PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

Welfare and Institutions Code Section 15657 provides enhanced remedies under the Elder Abuse Act, in certain situations, but with very strict requirements:

> "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse [or] neglect . . . and that the defendant has been guilty of recklessness, oppression, fraud or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:
>
> (a) The court shall award to the plaintiff reasonable attorney's fees and costs . . .
> (b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.] However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.
> (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

Moreover, with respect to punitive damages, Civil Code Section 3294(a) provides, in pertinent part, as follows:

> "(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
> (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, ***unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation***." [Emphasis added.]

Warren R. Paboojian, Esq.                          **WILSON GETTY LLP**
Baradat & Paboojian, Inc.
Re: *Jaime Gonzalez, individually and as SII to the Estate of Santiago Gonzalez, deceased, et al. v. Redwood Springs Healthcare Center*
August 31, 2020
Page 11

      Here, while Plaintiffs' Complaint contains prayers for punitive damages and attorney's fees and costs pursuant to Welfare and Institutions Code section 15657, Plaintiffs have failed to plead facts, as opposed to conclusions relating to corporate ratification or advanced knowledge of the unfitness of an employee as required to recover such damages.  As such, Defendant intends to file a Motion to Strike these claims for damages, pursuant to Federal Rules of Civil Procedure, Rule 12(f).

      We look forward to your response to this meet and confer, and are available to further discuss the issues raised in this letter.

      Thank you for your courtesy and cooperation in this matter.

                                     Very truly yours,

                                     WILSON GETTY LLP

                                     *Kim S. Cruz*

KSC/

Enclosures:
PREP Act
Declaration of HHS Secretary and Amendments thereto
Advisory Opinion
Letter re Covered Persons under the PREP Act