Warren R. Paboojian, No. 128462
wrp@bplaw-inc.com
Jason S. Bell, No. 213234
jsb@bplaw-inc.com
BARADAT & PABOOJIAN, INC.
720 West Alluvial Avenue
Fresno, California 93711
Telephone:  (559) 431-5366
Facsimile:  (559) 431-1702

Attorneys for Plaintiffs
JAIME GONZALEZ, individually
and as Successor in Interest to the
Estate of Santiago Gonzalez, deceased;
JORGE GONZALEZ; AMERICO GONZALEZ;
MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ;
ROBERTO GONZALEZ; TARCILA REVELES;
and SANTIAGO GONZALEZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME GONZALEZ, individually and as Successor in Interest to the Estate of Santiago Gonzalez, deceased; JORGE GONZALEZ; AMERICO GONZALEZ; MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ; TARCILA REVELES; and SANTIAGO GONZALEZ,<br><br>        Plaintiffs,<br><br>vs.<br><br>REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC; and DOES 1 to 50, inclusive,<br><br>        Defendants. | Case No. 1:20-cv-01260-NONE-EPG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND; REQUEST FOR STAY OF BRIEFING ON MOTION TO DISMISS**<br><br>**Hearing:**<br><br>**Date   :   November 2, 2020**<br>**Time   :   9:30 a.m.**<br>**Courtroom:   4** |

///
///
///
///
///
///

MEMORANDUM OF POINTS AND AUTHORITIES                         FILE NO. 2729

# TABLE OF CONTENTS

Page

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Legal Standard for Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. Redwood Springs Has Not Established Any Basis For Federal Officer Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1. Redwood Springs Was Not "Acting Under" The Direction of A Federal Officer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2. Every District Court To Have Considered This Issue Has Ordered Remand. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3. In Any Event, The Face of The Complaint Controls And Is Inconsistent With Redwood Springs' Jurisdictional Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. There Is No Federal Question Presented In Plaintiffs' Complaint; This Court Does Not Have Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1. A Defendant Cannot "Create" Federal Jurisdiction By An Artful Rewording Of The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2. The PREP Act Does Not Make a Federal Case Out Of Every Negligence or Malpractice Claim That Arises from COVID . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3. *Parker v. St. Lawrence* Is Inapposite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D. There Are No "Important Federal Issues" Which Could Support Retaining Federal Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. PLAINTIFFS REQUEST THE COURT STAY BRIEFING ON REDWOOD SPRINGS' MOTION TO DISMISS PENDING A RULING ON THIS MOTION TO REMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES**                                                                                                         Page(s)

*Casabianca v. Mount Sinai Medical Center*
    2014 WL 10413521, at *1 (N.Y. Sup. 2014) .................................... 10

*Caterpillar Inc. v. Williams*
    482 U.S. 386, 392 (1987) ............................................. 2, 7, 10

*Dennis v. Hart*
    724 F.3d 1249, 1253 (9th Cir. 2003) ........................................ 6

*Durham v. Lockheed Martin Corp.*
    445 F.3d 1247, 1251 (9th Cir. 2006) ........................................ 4

*Estate of Maglioli v. Andover Subacute Rehab. Ctr.*
    (Dist. NJ, August 12, 2020) 2020 U.S. Dist. LEXIS 145055 .................. 5, 9, 10

*Fidelitad, Inc. v. Insitu, Inc.*
    904 F.3d 1095, 1099 (9th Cir. 2018) ...................................... 3, 4

*Grable & Sons Metal Products v. Darue Engineering & Mfg.*
    545 U.S. 308 (2005) ..................................................... 11

*Guas v. Miles, Inc.*
    980 F.2d 564, 566 (9th Cir. 1992) .......................................... 3

*Gully v. First National Bank*
    299 U.S. 109, 112-113 (1936) .............................................. 3

*Holman v. Laulo-Rowe Agency*
    994 F.2d 666, 668 (9th Cir. 1993) .......................................... 8

*Jackson v. Big Blue Healthcare*
    (Dist. Of Kansas August 19, 2020) 2020 U.S. Dist. LEXIS 150018 ........... 5, 9, 10

*Lecce v. Medtronic, Inc.*
    2019 U.S. Dist. LEXIS 112731, *12. ........................................ 12

*Leite v. Crane Co.*
    749 F.3d 1117, 1120 (9th Cir. 2014) ........................................ 4

*Marin General Hosp. v. Modesto & Empire Traction*
    581 F.2d 941, 945 (9th Cir. 2009) .......................................... 3

*Martin v. Serrano Post Acute LLC*
    (Cent. Dist. Cal. Sept. 10, 2020) 2020 U.S. Dist. LEXIS 165874 .............. 6, 9

*N.G. v. Downey Regional Medical Center*
    140 F. Supp.3d 1036, 1038 (C.D. Cal. 2015) ................................. 6

*Panther Brands, LLC v. Indy Racing League, LLC*
    827 F.3d 586, 590 (7th Cir. 2016) .......................................... 4

# TABLE OF AUTHORITIES

**CASES**                                                                                                         Page(s)

*Parker v. St. Lawrence County Public Health Dept.*
    102 A.D. 3d 140 (N.Y. App. Div. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Rivet v. Regions Bank of Louisiana*
    522 U.S. 470, 475 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*TPS Utilicom Servs. v. AT&T Corp.*
    223 F.Supp. 1089, 1097-1098 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Watson v. Phillip Morris Cos.*
    551 U.S. 142, 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Winters v. Diamond Shamrock Chem. Co.*
    149 F.3d 387, 396-397 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**FEDERAL STATUTES**

    28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    28 U.S.C. § 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    28 U.S.C. § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    42 U.S.C. § 247d-6d(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    42 U.S.C. § 247d-6d(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    42 U.S.C. § 247d-6d(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**REGULATIONS**

    85 Fed. Reg. 15198 at 15202 (published March 17, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs, JAIME GONZALEZ, JORGE GONZALEZ, AMERICO GONZALEZ, MARISUSI RODRIGUEZ, RAMONA RODRIGUEZ, ROBERT GONZALEZ, TARCILA REVELES, AND SANTIAGO GONZALEZ ("Plaintiffs"), respectfully submit the following Memorandum of Points and Authorities in Support of their Motion to Remand this case to Superior Court for lack of subject matter jurisdiction.

## I.
## INTRODUCTION

Plaintiffs are family members of Santiago Gonzalez, who died of COVID-19 while in the care of nursing home Defendant, REDWOOD SPRINGS HEALTHCARE CENTER ("Redwood Springs") in Tulare County, California. Redwood Springs removed the case to this Court, claiming federal officer jurisdiction and federal question jurisdiction. Because there is no basis for removal on either ground, Plaintiffs move this Court to remand the case to Superior Court. In fact, at lest three separate federal courts have already rejected nearly identical removal jurisdiction arguments in COVID-related nursing home cases.

Additionally, despite Plaintiffs' repeated offers to stipulate to an extension of time for Redwood Springs to respond to the Complaint in this Court based on Plaintiffs' intention to move for remand, Redwood Springs declined and simultaneously seeks to burden this Court with a concurrent Motion to Dismiss. (Doc. 7.) In an effort to conserve party and judicial resources, and because no federal subject matter jurisdiction exists, Plaintiffs also ask this Court to stay briefing on the Motion to Dismiss pending a ruling on this Motion to Remand.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Santiago Gonzalez died on April 10, 2020, at Redwood Springs Healthcare Center from COVID-19. Mr. Gonzalez had been a patient at the facility for approximately 2 years at the time of his death; he was 86 years old. (Complaint, Doc. 1-1 ¶¶ 1, 8.)

By April of 2020, it was universally known that COVID-19 posed a very serious danger to elderly people and that nursing homes were particularly susceptible to killing their own residents if they did not take immediate action to protect them from COVID. It was also universally known that requiring

1 employees and visitors to use Personal Protective Equipment (face masks, gloves and gowns), testing
2 employees and residents, and isolating non-COVID-19 residents and employees from residents known
3 or suspected to be infected with the virus was required to keep the elderly residents safe. (Complaint,
4 Doc. 1-1 ¶ 10.)

5     Redwood Springs did not do, and is not alleged to have done, any of these things. In fact, it
6 entirely failed to take appropriate safety measures and, even worse, when it did become aware of infected
7 residents or employees, it failed to notify family members or other employees, and even required known
8 infected or symptomatic employees to attend work. (Complaint, Doc. 1-1 ¶ 11.)

9     During this time, Redwood Springs repeatedly assured Mr. Gonzalez's family that he was safe
10 in the facility and that all safety precautions were being taken to protect him from COVID-19. However,
11 he had tested positive for COVID-19 on April 3, 2020, and despite Redwood Springs staff repeatedly
12 telling Mr. Gonzalez's family that he was "fine," he died on April 10, 2020. Redwood Springs had
13 assured Mr. Gonzalez's family that he was "fine" as recently as the day he died. Redwood Springs
14 ultimately had more than 200 COVID cases in its facility, and 29 deaths. (Complaint, Doc. 1-1 ¶¶ 12-15.)

15     Plaintiffs subsequently filed this elder abuse and wrongful death case in Tulare County Superior
16 Court, asserting *only state law claims*. Like every other wrongful death and elder abuse case arising out
17 of the California Welfare and Institutions Code, it belongs in Superior Court. Nevertheless, Redwood
18 Springs has removed the case to federal court. They claim this Court has "federal officer" jurisdiction
19 and they make a preemption argument, contending the Public Readiness and Emergency Preparedness
20 (PREP) Act completely occupies the field of any COVID-related case, preempting state law for ***all***
21 COVID-related cases.

22 **III.**

23 **ARGUMENT AND AUTHORITY**

24 **A.    Legal Standard for Removal.**

25     There is no inherent right to remove a case from state to federal court; a defendant's ability to
26 change plaintiff's choice of forum arises entirely from statute, and a defendant has the burden to show
27 the matter presents a federal question. 28 U.S.C. 1441; see *Caterpillar Inc. v. Williams*, 482 U.S. 386,
28 392 (1987). To that end,

> "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (*Ibid.*)

Removal statutes are strictly construed *against* removal jurisdiction; the Ninth Circuit emphasizes that federal jurisdiction must be rejected if there is any question regarding a defendant's ability to remove a case. *Guas v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In fact, there is a strong presumption that removal is improper. (*Id.*)

Here, Redwood Springs asserts two different bases for removal: "federal officer" jurisdiction, and federal question preemption. However, "preemption" is generally an affirmative defense to a plaintiff's state law claims, and not a basis for removal jurisdiction. *Marin General Hosp. v. Modesto & Empire Traction*, 581 F.2d 941, 945 (9th Cir. 2009) ["complete" preemption required for federal question removal jurisdiction; otherwise the defense of federal preemption of a state-law claim appropriately made in state court]. Redwood Springs' assertion of "complete" preemption under the PREP Act is incorrect.

Similarly, the "federal officer" jurisdiction alleged in the removal papers is equally baseless. As set forth herein, there is simply no fact or law to support Redwood Springs' claim that it was "acting at the direction of a federal officer" when they engaged in the tortious conduct. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).

Accordingly, remand is appropriate.

**B.    Redwood Springs Has Not Established Any Basis For Federal Officer Jurisdiction.**

Generally speaking, "federal officer" jurisdiction exists to quell concerns that state court proceedings which involve unpopular federal laws or officials, or which are designed in order to thwart federal officials of a federal forum, do not operate to subvert federal laws or federal officers acting in their official capacities. See generally *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150. "The statute's history and th[e] Court's cases demonstrate that its basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting . . . within the scope of their authority." *Watson*, 551 U.S. at 150.

If it is difficult to see the application of those concerns to this medical negligence and elder abuse case whereby Plaintiffs' allege an utter failure to act, that is because there simply is no application.

Redwood Springs claims, nevertheless, that removal is appropriate because it contends it was operating "through the federal directives issued by the CDC [Centers for Disease Control], CMS [Centers for Medicare and Medcaid Services], and the CDPH [California Department of Public Health] surveyors contracted by CMS, federal authorities were making operational decisions as it related to the clinical pandemic response in skilled nursing facilities." (Motion, Doc. 1:20 p. 11:9-12.) In other words, Redwood Springs seeks to turn its following (or, as here, failure to follow) CDC guidelines and other recommendations as essentially a commandeering of its facility by the federal government, justifying federal jurisdiction. This is incorrect.

Section 1442(a)(1) "authorizes removal of a civil action brought against any person 'acting under' an officer of the United States 'for or relating to any act under color of such office.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (quoting 28 U.S.C. § 1442(a)(1)). To invoke the statute, Redwood Springs would have to show that:

> (1) it is a "person" within the statute's meaning,
>
> (2) a causal nexus exists between plaintiffs' claims and the actions it took under a federal officer's direction, and
>
> (3) it has a "colorable" federal defense to plaintiffs' claims.
>
> See *Fidelitad, supra*, 904 F.3d at 1099; *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

**1.  Redwood Springs Was Not "Acting Under" The Direction Of A Federal Officer.**

Redwood Springs' claim fails because it was not "acting under" the direction of a federal officer while undertaking the actions that are the subject of plaintiffs' claims.

Specifically, for any private entity such as Redwood Springs to be considered to be acting under a federal officer's direction such that federal jurisdiction is appropriate, the government must be using a private corporation "to achieve an end it would have otherwise used its own agents to complete." *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016).

///

The party seeking to invoke standing as a "federal officer" generally must show they have been subjugated to the control of a federal superior. Examples include a private person who was a federal officer's driver for a raid during prohibition, actually assisting the federal officer to carry out his or her duties or a government contractor acting under federal direction. See *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-397 (5th Cir. 2007).

Here, Redwood Springs simply lists a series of CDC and CMS advisories, updates, memoranda and guidance - as well as President Trump's declaration of a national emergency - to summarily conclude that "[a]t all relevant times Redwood Springs was acting at the specific direction of federal authorities to address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic, and prevent the spread of the virus." (See Motion, Doc. 1 p. 11:22-24 and paragraph 15 A-L.)

The United States Supreme Court has made clear, however, that a federal agency's direction, supervision, or monitoring of any private company's activities is not sufficient to permit removal jurisdiction, no matter how detailed those directions or monitoring are. *Watson, supra*, 551 U.S. at 152. The Court has stated that removal is never justified where all that is required of the private party is "simply *complying* with the law." *Id.*, emphasis in original.

The Court noted that preventing removal where a defendant simply claims they have been "acting under" the direction of a federal officer when complying with regulatory direction also comports with the statutory purpose of removal jurisdiction. "When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice.'" *Id.*

**2.      Every District Court To Have Considered This Issue Has Ordered Remand.**

Not surprisingly, given the purpose of the statute and the case law set forth above, every district court who has heard this argument for removal based on compliance (or non-compliance) with COVID guidance and emergency orders in the nursing home context has rejected it: the District of New Jersey in *Estate of Maglioli v. Andover Subacute Rehab. Ctr.* (Dist. NJ, August 12, 2020) 2020 U.S. Dist. LEXIS 145055; the District of Kansas in 12 related cases, all remanded, in *Jackson v. Big Blue Healthcare* (Dist. Of Kansas August 19, 2020) 2020 U.S. Dist. LEXIS 150018; and the Central District of California in

*Martin v. Serrano Post Acute LLC* (Cent. Dist. Cal. Sept. 10, 2020) 2020 U.S. Dist. LEXIS 165874. All three courts rejected arguments that the COVID guidance of the federal government rose anywhere close to the level of control and subjugation of a private party to justify federal officer jurisdiction.

Additionally, similar arguments made by nursing homes before the COVID outbreak in the context of seeking federal officer removal based on Medicare regulations have also been summarily rejected. The Central District of California has noted finding compliance with federal Medicaid guidelines to invoke federal officer removal would effectively allow "every medical malpractice case filed against [nursing homes] that arise under state law [to] be removed to federal court." *N.G. v. Downey Regional Medical Center*, 140 F. Supp.3d 1036, 1038 (C.D. Cal. 2015).

So too, here. The pages of guidelines and guidance issued by the federal government in the face of COVID-19 in no way made nursing homes actors of the federal government. To conclude otherwise would invite every elder abuse and negligence state law claim filed against them to become a federal case, with absolutely no justification for such under the statutory or case law. Even if Redwood Springs could meet any other of the section 1442 removal criteria, its "federal officer" removal argument must fail because it simply was not "acting under" the direction of a federal officer.

### 3. In Any Event, The Face of The Complaint Controls And Is Inconsistent With Redwood Springs' Jurisdictional Argument.

Moreover, in this case, Plaintiffs' claims are that Redwood Springs entirely ***failed*** to comply with the federal regulatory orders that it now seeks to use as a shield from the state law claims made against it in state court. Even assuming Redwood Springs could make a colorable claim that it would have been "acting under" the direction of a federal officer had it followed the guidelines and directives of the CDC and CMS, removal jurisdiction is determined by face of the complaint. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998); *Dennis v. Hart*, 724 F.3d 1249, 1253 (9th Cir. 2003) [federal courts must determine jurisdiction only with what appears in complaint, without anticipation of defenses defendant may raise].

Here, the face of Plaintiffs' complaint claims that Redwood Springs "***failed*** to take appropriate safety measures," ***failed*** to use the PPE pursuant to the federal guidelines it now seeks to rely on, ***failed*** to monitor for COVID per those guidelines, ***failed*** to restrict visitors pursuant to the guidelines, and ***failed***

to quarantine for COVID per federal guidelines. (Complaint ¶ 11.) Thus, even under Redwood Springs' own jurisdictional argument that it was "acting under" the direction of federal agencies, the allegations of the complaint are inconsistent with any such argument. **The *failure* to act pursuant to federal authority certainly cannot form the basis of a jurisdictional argument that the defendant acted pursuant to federal authority.**

Accordingly, as set forth herein, Redwood Springs' "federal officer" jurisdiction argument fails.

**C.   There Is No Federal Question Presented In Plaintiffs' Complaint; This Court Does Not Have Subject Matter Jurisdiction.**

**1.   A Defendant Cannot "Create" Federal Jurisdiction By An Artful Rewording Of The Complaint.**

A defendant cannot "create" federal jurisdiction by attempting to invoke a federal statute as a possible defense; rather, federal question jurisdiction must arise directly out of the claims alleged in a complaint. *Caterpillar, Inc., supra*, 482 U.S. at 393. Put succinctly, only cases which invoke a federal question **and could have originally been filed in federal court may be removed to federal court by a defendant.** *Id.* at 392-393.

There is absolutely nothing about Plaintiffs' complaint for "Elder Abuse," "Willful Misconduct," and "Wrongful Death" which gives rise to a federal question which would have made filing the complaint appropriate - or even allowable - in federal court. (See generally Complaint, Doc. 1-1.)

Nevertheless, Redwood Springs asserts 28 U.S.C. section 1331 federal question jurisdiction on the inaccurate and disingenuous claim that because the complaint's allegations "relate to" Redwood Springs' "administration or use of" "qualified pandemic products," that the "claims fall under the PREP Act." (Motion, Doc. 1 p. 15 ¶ 28.) As set forth below, there are numerous fallacies in this argument.

**2.   The PREP Act Does Not Make a Federal Case Out Of Every Negligence or Malpractice Claim That Arises from COVID.**

The PREP Act is invoked when the Secretary of the Department of Health and Human Services ("HHS") issues a declaration determining–for purposes of the PREP Act–that a disease or other health condition constitutes a public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that such conditions exist, he or she "may make a declaration, through publication in the Federal Register,

recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.*

Plaintiffs do not dispute that the Secretary has issued such a declaration regarding the COVID-19 pandemic, but that declaration has no application to the basic *state law claims* at issue here, regarding a nursing home's *failures*.

The PREP Act was initially enacted in 2005 to protect vaccine manufacturers from any financial responsibility for vaccines used to combat a declared public health emergency. The immunity applies to "covered countermeasures," which is a defined term.

A "covered countermeasure" under the PREP Act is a drug, biological product, or device that is a "qualified pandemic or epidemic product" or a "security countermeasure," or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act. *Id.* at § 247d-6d(i)(1). It also includes a "respiratory protective device that is approved by the National Institute for Occupational Safety and Health." *Id.* And the COVID-19 Declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. 15198 at 15202 (published March 17, 2020).

In order for the PREP Act to serve as a basis for removal jurisdiction on the grounds of preemption, it must apply to the allegations of the complaint. But a review of the PREP Act shows Plaintiffs' allegations simply do not fall within its purview. Complete preemption is a very narrow doctrine, and it is Redwood Springs' burden to show that the PREP Act applies to Plaintiffs' allegations, and it has not. See *TPS Utilicom Servs. v. AT&T Corp.,* 223 F.Supp. 1089, 1097-1098, citing *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims.").

Plaintiffs' complaint universally alleges that Mr. Gonzalez died of COVID-19 because Redwood Springs *failed* to take preventative measures to stop the entry and spread of COVID-19 within the facility. Plaintiffs contend that Redwood Springs' failure to take those precautions led to the decedent contracting

and dying of COVID-19.  (Complaint, Doc. 1-1 ¶ 11.)  Nowhere in the complaint do Plaintiffs suggest that the decedent's death was causally connected to the administration or use of any drug, biological product, or device (i.e. a covered countermeasures).  As stated by Judge Teeter of the District of Kansas regarding the complaint in a case with nearly identical facts to those here, in the *Big Blue Healthcare* cases noted, *supra*, 2020 U.S. Dist. LEXIS 150020 *17, "the allegations are the opposite–that Defendants' failure to act caused the decedent's death."

As previously stated, recent cases have examined the applicability of the PREP Act to claims of negligence related to COVID deaths in nursing home facilities. See *Maglioli v. Andover Subacute Rehab. Ctr.* (Dist. NJ, August 12, 2020) 2020 U.S. Dist. LEXIS 145055; *Jackson v. Big Blue Healthcare* (Dist. Of Kansas August 19, 2020) 2020 U.S. Dist. LEXIS 150018; *Martin v. Serrano Post Acute LLC* (Cent. Dist. Cal. Sept. 10, 2020) 2020 U.S. Dist. LEXIS 165874.

As here, the District of New Jersey cases involved allegations that residents at a care facility contracted COVID-19 because of the defendants' failure to exercise due care. The allegations included the ***failure*** to observe a variety of safety and infection-prevention protocols.  *Maglioli v. Andover Subacute Rehab. Ctr.* (Dist. NJ, August 12, 2020) 2020 U.S. Dist. LEXIS 145055, at *1-*2 (D.N.J. 2020). The plaintiffs sued in state court for negligence and the defendants removed the case to federal court. *Id.* The New Jersey court, on the plaintiffs' motions to remand, compared the allegations to the PREP Act and found the PREP Act inapplicable. *Id.* at *9-*10. Specifically, the court concluded that ***a malpractice claim about countermeasures that were not used "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them.***" *Id.* at *9, emphasis added.

Plaintiffs' claims in this case are substantivally the same as the allegations in *Maglioli*, the *Big Blue Healthcare* cases and *Martin*.  Redwood Springs has not met its burden to establish preemption; the PREP Act, by its very terms, does not apply.

      3.    <u>***Parker v. St. Lawrence* Is Inapposite.**</u>

In its analysis of the PREP Act to the facts of this case, Redwood Springs cites to only one case in support of its position, *Parker v. St. Lawrence County Public Health Dept.*, 102 A.D. 3d 140 (N.Y. App. Div. 2012).  (See Motion, Doc. 1 ¶ 50.)

*Parker v. St. Lawrence County Public Health Department* involved a public health department's administration of a vaccine to a child without parental consent. *Parker v. St. Lawrence Cty. Pub. Health Dept.*, 102 A.D.3d 140, 141, 954 N.Y.S.2d 259 (N.Y. App. Div. 2012). The court analyzed the PREP Act's applicability and concluded the plaintiff's claim was preempted. *Id.* at 143-44.

Here, Redwood Springs argues that *Parker* necessarily dictates a finding of federal preemption in this case because "Congress has provided an exclusively remedy for Plaintiffs' claims …." (Motion, Doc. 1 p. 23:22-23.) But Redwood Springs fails to make any argument or give any explanation for how *Parker* applies to a case, as here, where no vaccine was used and no PREP Act countermeasure is mentioned, or alleged to have been employed at all.

In *Parker*, on the other hand, **it was undisputed that the vaccine covered by the PREP Act was administered to the child**. There was no question that the claim of loss–administration of a vaccine without consent–was "caused by, [arose] out of, relat[ed] to, or result[ed] from the administration to . . . an individual of a covered countermeasure." *See id.* at 143; *see also* 42 U.S.C. § 247d-6d(a)(1); see also *Casabianca v. Mount Sinai Medical Center*, 2014 WL 10413521, at *1 (N.Y. Sup. 2014), [PREP Act inapplicable for claims that defendant negligently ***failed*** to use the H1N1 vaccine]. The same cannot be said here.

In short, and as concluded by the district court judge in the Kansas COVID-19 nursing home cases, "Read together, *Maglioli*, *Casabianca*, and *Parker* support the conclusion that the PREP Act applies to action, not inaction." *Big Blue Healthcare* cases (*Lutz*), 2020 U.S. Dist. LEXIS 150020 * 16.

The judge in the *Big Blue Healthcare* matters went on to state:

> Defendants generally argue that Plaintiffs' allegations fall within the scope of the PREP Act. But in doing so, they generally just re-write Plaintiffs' allegations using the language of the PREP Act–language never actually used in Plaintiffs' complaint. They also argue that allegations that the facility <u>failed</u> to provide <u>adequate</u> protections invokes all devices and other interventions that the facility did use. But the complaint says almost nothing about any interventions–drugs, devices, etc.–that were used, and there are no allegations that the administration or use of any of those things <u>caused</u> the death of the decedent. Again, the allegations are the opposite–that Defendants' <u>failure to act</u> caused the decedent's death. To the extent Defendants want to argue that the PREP Act applies, they must do so based on the complaint as it is–not as Defendants would prefer it to be. *Caterpillar*, 482 U.S. at 396-97 (noting that a defendant cannot ignore the allegations in the complaint and argue "that there are different facts [a plaintiff] might have alleged that would have constituted a federal claim"

so that it can "justify removal on the basis of facts not alleged in the complaint").

*Id.* at *16-17.

In sum, the PREP Act does not, by its own plain language, apply to allegations of a *failure* to act under some allegedly federally proscribed protocol. Rather, the face of Plaintiffs' Complaint states claims for wrongful death and elder abuse based on Redwood Springs' failures to take any precautions, not because of their actions taken as a result of federal guidance. There simply is not application of the PREP Act in this case and federal subject matter jurisdiction does not exist.

### D. There Are No "Important Federal Issues" Which Could Support Retaining Federal Jurisdiction.

Finally, though not entirely clear, Redwood Springs appears to argue that even though there is no PREP Act preemption, the Court should retain jurisdiction over these State law claims because the application of the PREP Act presents a "substantial federal question." (Motion, Doc. 1 p. 24:5-6.) Redwood Springs claims that *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005) supports this basis for removal.

First, and most importantly, any potential retention of federal jurisdiction is impossible here because, as set forth above, the PREP Act simply does not apply to claims regarding *a failure to act*, even if those failures occurred in relation to countermeasures which otherwise might fall within the purview of the Act. Accordingly, the exercise of removal jurisdiction is not an option for the Court because subject matter jurisdiction does not exist.

Redwood Springs' argument fails for a second reason as well: the *Grable* exception, even if it could be applied, absolutely should not be applied to basic state law medical malpractice and elder abuse claims. The *Grable* court made clear that finding federal-question jurisdiction where Congress did not otherwise extend jurisdiction (such as if the PREP Act could be an affirmative defense to Plaintiffs' claims herein, even though it does not preempt state law on them) should only be in "rare" cases where extending jurisdiction will not "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

///

1  Litigating basic malpractice and elder abuse claims in federal court would be the epitome of
2  upending "the normal currents of litigation." In fact, as has been made clear in a variety of basic tort
3  settings where a federal regulation or federally regulated medical device is involved, "finding
4  federal-question jurisdiction simply because the action involves [COVID] would open federal courts'
5  doors to any medical malpractice case involving [COVID]. These cases are not rare and would materially
6  affect the normal currents of litigation." *Lecce v. Medtronic, Inc.*, 2019 U.S. Dist. LEXIS 112731, *12.

7  As previously stated, the Court does not have subject matter jurisdiction over this case because
8  the PREP Act does not apply. But even assuming, arguendo, that it could be asserted as an affirmative
9  defense, purposefully extending federal jurisdiction over these state law claims on the false assumption
10 that they involve an "important federal question" would *unquestionably* disrupt Congress's intended
11 federal-state court balance. The argument must be rejected.

## IV.

### PLAINTIFFS REQUEST THE COURT STAY BRIEFING ON REDWOOD SPRINGS' MOTION TO DISMISS PENDING A RULING ON THIS MOTION TO REMAND

15 Additionally, despite Plaintiffs' repeated offers to stipulate to an extension of time for Redwood
16 Springs to respond to the Complaint in this Court based on Plaintiffs' intention to move for remand,
17 Redwood Springs declined and instead seeks to simultaneously burden this Court with a concurrent
18 Motion to Dismiss. (Doc. 7.)

19 In an effort to conserve party and judicial resources, and because no federal subject matter
20 jurisdiction exists, Plaintiffs request that the Court stay briefing on the Motion to Dismiss pending a
21 ruling on this Motion to Remand.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## V.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court remand the case to the Superior Court of California for the County of Tulare.

Dated: October 2, 2020                                                 BARADAT & PABOOJIAN, INC.

By: ___/s/_____
    Warren R. Paboojian
    Jason S. Bell
    Attorneys for Plaintiffs
    JAIME GONZALEZ; JORGE GONZALEZ; AMERICO GONZALEZ; MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ; TARCILA REVELES; and SANTIAGO GONZALEZ