Warren R. Paboojian, No. 128462
wrp@bplaw-inc.com
Jason S. Bell, No. 213234
jsb@bplaw-inc.com
BARADAT & PABOOJIAN, INC.
720 West Alluvial Avenue
Fresno, California 93711
Telephone:  (559) 431-5366
Facsimile:  (559) 431-1702

Attorneys for Plaintiffs
JAIME GONZALEZ, individually
and as Successor in Interest to the
Estate of Santiago Gonzalez, deceased;
JORGE GONZALEZ; AMERICO GONZALEZ;
MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ;
ROBERTO GONZALEZ; TARCILA REVELES;
and SANTIAGO GONZALEZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME GONZALEZ, individually and as Successor in Interest to the Estate of Santiago Gonzalez, deceased; JORGE GONZALEZ; AMERICO GONZALEZ; MARISUSI RODRIGUEZ; RAMONA RODRIGUEZ; ROBERTO GONZALEZ; TARCILA REVELES; and SANTIAGO GONZALEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 1:20-cv-01260-NONE-EPG<br><br>**PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO REMAND**<br><br>**Hearing:**<br><br>**Date    :    November 2, 2020**<br>**Time   :    9:30 a.m.**<br>**Courtroom:  4** |

Plaintiffs respectfully submit the following reply to the Opposition to Plaintiffs' Motion to Remand.

**I.**

**INTRODUCTION**

Defendants posit three alleged bases for federal jurisdiction: federal officer removal jurisdiction, complete preemption ("exclusive jurisdiction") under the PREP Act or, as a fall back, they claim "this

---

REPLY TO OPPOSITION TO MOTION TO REMAND          -1-          FILE NO. 2729

case raises substantial and important federal issues requiring the court to retain jurisdiction." (Opposition at p. 4, 21, 23, Doc. 16.)

As set forth in Plaintiffs' moving papers and herein, the arguments are without merit and the matter should be remanded.

## II.

## ARGUMENT

**A.  Redwood Springs Was And Is Not A Federal Officer Simply Because They Were Subject To Federal Guidelines.**

**1.   Standard for Removal (Federal Officer Removal).**

As an initial matter, it is important to quickly debunk Defendants' claim that its "right" of removal under 42 U.S.C. section 1442 arises merely from a "colorable federal defense" and that this Court has a duty to broadly interpret section 1442 always "in favor of removal." (Opposition at p. 4:21, 14-15, Doc. 16.) These statements are a gross misrepresentation of the standard of removal under the federal officer removal statute.

There is no authority whatsoever for the proposition that a district court must broadly interpret federal officer removal when there is no colorable argument that a federal officer is involved in the case. Rather, any "broad" interpretation of section 1442 can only come into play where removal is necessary to "give full effect to the purposes for which" the federal officer statutes were enacted. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir, 2006). And, of course, the purpose of federal officer removal jurisdiction is to protect federal actors from a state trial when they were merely acting under federal direction, and where there might be bias against such federal action. *Arizona v. Manypenny*, 451 U.S. 232, 241-242 (1981).

Here, on the other hand, Defendants are making a tortured argument that the "unprecedented control and direction the federal government exercised over skilled nursing facilities with respect to the response to the COVID-19 pandemic" somehow transforms Redwood Springs–a private nursing home in Visalia–into a federal officer who can only receive a fair trial in federal court. (Opposition at p. 5:24-6:2, Doc. 16.)

///

Defendant cites no authority to support the idea that this Court should so broadly construe whether a private entity is considered a "person" within the meaning of section 1442 that following federal guidelines and direction renders every private actor a federal entity. To the contrary, and as stated in Plaintiffs' moving papers, the Supreme Court has plainly stated that federal agency regulation–even when in considerable detail and with "unprecedented control"–does not convert a private actor into a federal officer for jurisdiction purposes. *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 152-153 (2007).

In fact, the very page cite Redwood Springs provides for its statement that the "'acting under' requirement is broad and is also to be liberally construed" ignores that, in that very case, the Court rejected any notion that even detailed, mandatory and strict federal guidelines could transform a private entity into a federal actor for removal jurisdiction. The Court made clear, "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson, supra*, 551 U.S. at 147.

**2.   Redwood Springs Was Not "Acting" As, Or Under The Direction Of, A Federal Officer By Virtue of Federal Guidelines and Recommendations.**

With this understanding that regulatory guidelines and directives do not turn private entities into federal actors, it is clear Redwood Springs cannot meet the first and most critical component of removal jurisdiction for its federal officer theory, the "acting under" element. Redwood Springs' argument is simply that because the federal government released numerous guidelines and recommendations to skilled nursing facilities in the face of the pandemic that at some, undefined, point those directions morphed into federal control of the facility.

As evidenced by the Opposition papers themselves, there is no authority for this position. That there were numerous guidelines and directives in the early months of the pandemic is reflective of the changing information available to the federal government, not some sort of increasing federal "takeover" of skilled nursing home facilities. Redwood Springs cites *Watson*, which expressly rejected such a claim, directing the opposite: "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply complying with the law." *Watson, supra*, 551 U.S. at 152. And, again,

///

///

this makes sense because "[w]hen a company subject to a regulatory order **(even a highly complex order)** complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice.'" *Ibid*, emphasis added.  Redwood Springs' argument to the contrary is wholly without merit.

The other district court cases from New York and the Northern District of California are equally unhelpful to Redwood Springs' argument.  Redwood Springs implies that regulatory action can rise to the level of federal actor jurisdiction if there is some vague "regulation plus …" (Opposition at p. 6:12, Doc. 16.)  But in *Bakalis v. Crossland Savings Bank*, 781 F.Supp. 140, 144-145 (EDNY 1991), cited by Redwood Springs, the court simply affirmed *Watson's* direction that even a federally chartered savings bank is not a federal actor when it is "simply a corporation regulated by the government." *Id*. at 145.

Similarly, in *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (EDNY 1992) the district court concluded that no federal officer jurisdiction existed even where the removing defendants alleged they took their actions "under the direct and detailed control of various government officers …" *Id*. at 950.  Even then, the district court rejected federal officer removal jurisdiction where the claims stated simply sounded in products liability and negligence, and being sued in state court sounded no "threat to the enforcement of federal policy sufficient to warrant removal." *Ibid*.  So too here.  Even under heavy government regulation, there is nothing about the basic wrongful death and negligence allegations against Redwood Springs that could conceivably subject it to bias in state court, or to threaten the enforcement of federal policy.

Finally, Redwood Springs cites *Fung v. Abex. Corp*, 816 F.Supp. 569, 572 (ND Cal. 1992), which concluded that General Dynamics had been "acting under" the direction of a federal officer when it constructed submarines under the direct control of the Secretary of the Navy "under federal contract and on federal enclaves." *Id*. at 572.  Redwood Springs does not attempt to make any reasoned argument or analogy to how it is comparable to a private company that is hired to build the federal government's submarines under the direct control of the Secretary of the Navy, and understandably so.  There is simply no comparison that can reasonably be drawn.  Rather, Redwood Springs is simply a private company that, like every other skilled nursing facility in the United States, received guidelines and memoranda from the federal government in response to the pandemic.  It was not "acting under" the direct control or direction of a federal officer and federal officer removal is inappropriate.

1    As stated in Plaintiffs' Motion, a contrary conclusion would implicate every facility which
2  receives Medicare or Medicaid payments, and is entirely outrageous and untenable. See *N.G. v. Downey*
3  *Regional Medical Center*, 140 F. Supp. 1036, 1040 (noting that adopting the defendant's argument for
4  removal jurisdiction would mean "every private medical entity providing medical services for …
5  Medicare or Medicaid recipients would be acting under a federal officer for purposes of section
6  1442(a)(1)").
7    Because Redwood Springs was not "acting under" the direction of a federal officer, it need not
8  consider the other factors Redwood Springs would have to also meet for removal to be appropriate.

9  **B.    Plaintiffs' Claims Do Not Fall Within the Provisions of the PREP Act.**

10    Redwood Springs alternatively claims that the PREP Act requires complete preemption of any
11  claims which implicate it, and that Plaintiffs' claims fall within that category. While Plaintiffs disagree
12  that the legislature intended complete preemption with respect to the PREP Act, regardless, the Court
13  need not reach that analysis because nothing about Plaintiffs' claims even colorably implicates the PREP
14  Act.
15    Plaintiffs' Motion sets forth the common sense reasoning and case analysis of why Plaintiffs'
16  allegations of Redwood Springs' inaction cannot implicate an Act that is intended to protect
17  manufacturers and those acting to create and utilize "countermeasures" to fight the COVID-19 pandemic.
18  (Doc. 11-1.) Redwood Springs' response is that the claims of negligence "relate to the management and
19  operation of Defendant's covered countermeasures program, including decisions as to how to best
20  optimize supplies of PPE and COVID-19 testing kits in light of known regional and national shortages."
21  (Opposition at p. 20:5-7, Doc. 16.)
22    Recently, the district court in the Western District of Pennsylvania joined the other jurisdictions
23  listed in Plaintiffs' Motion in wholly rejecting the argument that a skilled nursing facility's inaction to
24  protect its residents from COVID-19 implicates protection under the PREP Act as a protected
25  "countermeasure." As Redwood Springs has done here, the defendant attempted to frame the plaintiffs'
26  complaint as raising claims "related" to the use of countermeasures as defined in the PREP Act. See
27  *Sherod v. Comprehensive Healthcare Mgmt. Servs. LLC*, 2020 U.S. LEXIS 191885, *19 (W.D. Penn.)
28  The court easily rejected this characterization:

> "The characterization of Plaintiff's claims by Defendants is both overbroad and inaccurate. This characterization by Defendants implies that [the facility] took countermeasures around the time of decedent's acquisition of the virus and her death due to the virus. [¶] As noted above, the PREP Act creates immunity for all claims of loss causally connected to the use of covered countermeasures. The allegations asserted by Plaintiff in her Complaint directly suggest that the decedent died because [the facility] ***failed to use countermeasures***."

*Id*. at *19, emphasis added.

The *Sherod* court then explained that allegations regarding the failure to take countermeasures must fall outside of the Act, and noted the numerous other courts across the country which have followed this common sense analysis. *Id*. at *19-20.

The court concluded, "the PREP Act applies to potentially immunize certain 'covered persons' from their actions taken–not from their inaction–to prevent the spread of COVID-19." *Id*. at *21.

Plaintiffs' claims here are for wrongful death and negligence related to Redwood Springs' COVID-19 inaction. They do not implicate the PREP Act and the case should be remanded.

**C.     There Is No Important Federal Question Warranting Jurisdiction.**

Even if this Court had the discretion to exercise jurisdiction here, which is questionable, there is no important federal question warranting federal resolution of Plaintiffs' state law negligence and wrongful death claims.

Redwood Springs contends this case involves questions of national importance and matters of first impression. It does not. Rather, Redwood Springs is asking this Court to exert jurisdiction and find it immune from liability for its failure to invoke the very guidelines and measures it claims protection under. There is simply no support for this argument.

///

///

///

///

///

///

///

## III.

## CONCLUSION

There is no basis for federal jurisdiction in this case, and the matter should be summarily remanded to the Superior Court of California for the County of Tulare.

Dated: October 26, 2020                                     BARADAT & PABOOJIAN, INC.

By:_____
    Warren R. Paboojian
    Jason S. Bell
    Attorneys for Plaintiffs
    JAIME GONZALEZ; JORGE
    GONZALEZ; AMERICO GONZALEZ;
    MARISUSI RODRIGUEZ; RAMONA
    RODRIGUEZ; ROBERTO GONZALEZ;
    TARCILA REVELES; and SANTIAGO
    GONZALEZ